DEAN VENABLE *et al. vs.* D. COFFMAN, *et al.*

July Term, 1867.

1. Trustees of a church may be appointed or removed, at the instance of the proper authorities of the congregation upon motion, after reasonable notice, in the manner provided for by the 9th sec., chap. 78, Code 1860, without the necessity of a suit in equity.

2. A charity given for a particular purpose cannot be altered or diverted to any other. And when the purpose for which it was created fails, by reason of the organization to which it was donated ceasing to exist, the charity reverts to the donor or his heirs.

3. An organized church cannot be divested of its property even though a majority of its members enter into a new organization which adopts the name of the original church; provided the old organization still exists.

4. The attorney for the M. E. Church at L. gave notice on the 28th day of August, 1866, to the trustees thereof, that he would apply to the judge of the circuit court of G. county, on the 11th day of September, 1866, for the removal of certain of their body, and the appointment of others. On the latter day the defendants appeared in court and by their counsel asked that the hearing of the motion might be delayed for two days, offering no objection to the notice; when it was taken up and heard, and the removal of the certain trustees ordered and the appointment of others made. It appeared in evidence that, the trustees sought to be removed held for the use and occupation of the M. E. Church South, certain church property which by deed had been conveyed in 1851 to certain trustees and their successors in office for the use of .the ministers and members of the M. E. Church of the United States of America; that this property was within the territory of the Baltimore Conference of said church, which conference had, in 1845, under the plan of separation between the M. E. Church and the M. E. Church South, decided to adhere to the M. E. Church; and no vote was proven whereby the congregation of members at L. by a majority decided to join the church south; but it was shown that they had accepted the ministers from said conference until in 1861. It further appeared that the Baltimore Conference which met at Staunton in 1861, declared itself "separate and independent" from the General Conference of

*See page 187.

the M. E. Church of the United States, "still claiming to be an integral part of the M. E. Church," and that the same body which met at Baltimore in 1862, the place fixed at Staunton for the next meeting, repudiated and disavowed the action at Staunton; that many of the members of the Baltimore Conference who were at Staunton, though a minority of the body, met at Alexandria in 1866, and declared themselves to be the Baltimore Conference, and formally separated from the M. E. Church, and attached themselves to the M. E. Church South, to which organization the trustees sought to be removed claimed to belong, and for the use of whose ministers and members they held the said property: HELD:

1. That the appearance of the defendants on the day to which the motion was returnable, and after it had been called and the notice proved, and moving for a continuance of the hearing of it to a certain day, when it was heard, without objecting to the notice, must be considered as waiving any objection thereto, for want of reasonable notice, or if it was otherwise insufficient.

2. The legal title to the property was vested in trustees for the use and benefit of the M. E. Church of the United States, and that until legally divested, it must continue to be held as a trust for said church so long as it has an existence.

3. That the conference which met at Alexandria was composed of a minority of the members of the Baltimore Conference proper, and was never recognized by the latter, nor any of its proceedings and resolutions as the act of the Baltimore Conference; and that by reason of the repudiation by the Baltimore Conference at Baltimore, in 1862, of the action at Staunton, in 1861, the question of separation was left as it stood before the action at Staunton, and the severance by the Alexandria Conference of the bond which bound it to the M. E. Church did not carry any of the property with it according to the plan of separation agreed on in 1844.

4. The Baltimore Conference having by its action in 1845 elected to remain with the M. E. Church, is conclusive of the question upon the congregation of Lewisburg or any part of the same, whether a majority or minority, as to their ecclesiastical connection, at this period of time, as the purposes and objects of the plan of separation, which were the peace of the church and the end of strife, would be defeated if after a reasonable time and an election made by the proper authorities, the question could be opened and thus be shifting from side to side as one party or the other might predominate.

The attorney for the Methodist Episcopal Chuch, on the 28th day of August, 1866, gave notice to *Joel McPherson, Thomas Henning, Wallace Robinson, James T. Caldwell, Dean*

*Venable, George Law, Henry Stuart, Patrick Beirne, and David K. Spotts,* that on Tuesday, the 11th day of September, 1866, he should apply to the *Hon. N. Harrison,* judge of the circuit court of *Greenbrier* county, to remove *Dean Venable, George Law, Henry Stuart, Patrick Beirne,* and *David K. Spotts,* claiming to act as trustees of the property of the Methodist Episcopal Church in the town of *Lewisburg,* and to appoint in their stead as such trustees, such persons as might be designated or elected by the quarterly conference of the M. E. Church, to be held in the district in September following. On the said 11th day of September, the motion was called up in the circuit court of *Greenbrier* county by the plaintiff's counsel, and the service of the notice proved, and upon the motion of the counsel for the defendants the application was continued and set for a hearing on the 13th day of September, 1866; and on that day on the calling of the motion, before the introduction of any evidence, the defendants moved to quash the notice and dismiss the proceedings; which motion the court overruled.

The defendants then moved that some responsible person should be held as security for costs, and the court sustained the motion; whereupon the security was given. The motion was then taken up, and the evidence heard and the cause argued. The court entered judgment removing the five defendants last named and appointing *D. Coffman, Sr., D. C. Coffman, Jr., Albert G. Williams, Archibald Lewis,* and *John Fry,,* in the stead of the parties removed, and giving to them and to the four trustees first named in the notice the legal possession of the church property for the use and benefit of the M. E. Church. But an indemnifying bond was required to be given by some one or more of the trustees substituted, to indemnify *Stuart* and *Spotts,* to whom the church was indebted for repairs, against all pecuniary liability or indebtedness on their part as trustees, on account of the church.

There was but one bill of exceptions taken in the cause, which embraced all the evidence submitted.

The plaintiff offered in evidence a copy of a deed made

in 1851 to the "trustees of the Methodist Episcopal Church in Lewisburg, and their successors in office," for two certain lots, known as Nos. 62 and 64, on which was erected a brick house of worship, "for the use of the ministers and members of the Methodist Episcopal Church of the United States of America, according to the rules and discipline which from time to time may be agreed upon and adopted by the ministers and members of said church at their general conference in the said United States of America." Also a copy of the proceedings of a quarterly conference held in Lewisburg, West Virginia, on the 10th of September, 1866, for Lewisburg station, Rockingham district, Baltimore conference of M. E. Church, which disclosed a resolution passed by the body alleging that the five trustees, *Venable* and others, had become members of another church, and that a majority of the trustees had failed to have the house of worship opened for the use of the members and ministers of the M. E. Church, but suffered it to be used by ministers and members of another denomination; and requesting the judge of the circuit court to remove the said trustees and appoint the persons heretofore mentioned as having been appointed by the court. It was also proved that this resolution was passed with the knowledge and concurrence of *E. P. Phelps*, presiding elder, and *J. S. Byers*, preacher in charge of the M. E. Church at Lewisburg; and that said quarterly conference was composed of certain persons, eight in all, and the two ministers above named.

It was further proved for the plaintiff by *J. S. Byers*, the preacher in charge, that *Phelps*, the elder, had some time previous to the 10th day of September, 1866, extended his (*Byers'*) jurisdiction as preacher so as to embrace the *Pleasant Hill* and *Agnes Chapel* churches as well as that in Lewisburg; that *Byers* had been regularly appointed a preacher by the Baltimore conference of his church, and assigned to the church at Lewisburg; that the latter, together with *Pleasant Hill* and *Agnes Chapel*, constituted the quarterly conference of the M. E. Church of Lewisburg station; that generally speaking, there was a difference between a station

and circuit conference; the term circuit applying to a number of appointments, but the term station conference not always applying to one station, but frequently comprehending other appointments at adjacent churches. That the witness had been assigned by the Baltimore conference as preacher in charge at Lewisburg, but that after his arrival there, *Phelps*, the elder, had added the two other churches to his station at Lewisburg; which witness believed to be in accordance with the rules and usuages of the M. E. Church. That where a preacher was assigned to a single congregation his quarterly conference consisted of the official members of his church in connection with such congregation, but when other churches were added to a station, their congregation also formed a part of the quarterly conference; part of the trustees sought to be appointed had their church connection in Lewisburg, and part at the other churches. That his congregation at Lewisburg numbered about sixty, all colored except four, and that he had as yet organized no classes except colored persons. That before this application, the witness had applied to one *John Waugh*, presiding elder of the M. E. Church South, who then had possession of the church property, and had been, by him and by the trustees, refused permission to preach in the same, and that such permission was still refused; and that the use and occupancy of the church still remained and was claimed by the M. E. Church South in the town of Lewisburg, and that witness had never preached in the church.

The plaintiff also proved by *E. P. Phelps*, that he was presiding elder for Rockingham district Baltimore conference M. E. Church, and that it embraced Lewisburg station. That the quarterly conference held on September 10th, at Lewisburg, was held with his concurrence; that the discipline of his church was contained in a book entitled, "Discipline, published in 1864."* The witness proved that he

---

* It was agreed at this point that the authenticated minutes, annual registers, disciplines, and proceedings of general and annual conferences of the Methodist Episcopal Church and the Methodist Episcopal Church South, should be regarded as evidence in the cause, without being put at length upon the record; and the Reporter not having access to these documents is not able to present many of the points considered with the fullness they obviously require.

had held a quarterly conference with the preacher in charge
and but one official member, and he was not certain but
that the presiding elder and the preacher in charge would
constitute a regular quarterly conference; that in the absence
of the presiding elder the preacher in charge was president
of the body.    That according to the discipline of the church,
trustees might be appointed on the recommendation of the
presiding elder or preacher in charge; that ordinarily the
Bishop arranges the charges or circuits, but, in the opinion
of the witness, it might be done by the presiding elder, who
is responsible alone to the Bishop for his official acts; that
he had attached the two country churches to the Lewisburg
charge the summer preceding, after having given notice to the
Bishop; that in making the change he acted according to the
spirit of the discipline and in view of the necessities of the
case, and thought himself justifiable as an officer and a man,
and also in having convened the quarterly conference on the
10th of September, 1866, and that the proceedings of that
body were all had with his concurrence, and in his opinion,
were proper and obligatory according to the rules of the
church; that if there were no quarterly conference in
*Greenbrier* that the witness and *Byers* as preacher in charge,
would be the proper parties to ask for the appointment of
trustees, and that they had both desired and recommended
the removal and appointment of trustees as sought by the
motion.    That regularly, the place for holding a quarterly
conference was where the last quarterly meeting was held,
but that at the last quarterly meeting at Chapel Hill, he,
witness, had given notice, as he thought he had a right to
do as presiding elder, that the next quarterty conference
would be held at Lewisburg on the 10th of September.
That the Bishop had nothing to do with the application for
the appointment or removal of trustees; and that the church
in controversy was within the limits of the Baltimore con-
ference of the M. E. Church, and was claimed, and always
had been, as the property of that church since the deed of
1851.    The plaintiff also introduced one *John Waugh*, pre-
siding elder of the M. E. Church South, who proved his

appointment as such by the Alexandria conference in 1866, and that the scheme for the separation of his church from the M. E. Church was initiated at the Staunton conference in 1861, and completed at the Alexandria conference in February, 1866.

The greater portion of the foregoing testimony seems to relate more particularly to the character of the proceedings by virtue of which the removal and appointment of the trustees was sought to be made, and which the court held to be regular; and the residue of the controversy turned upon the question of the separation of the two branches of the M. E. Church, both in 1844 at the general conference, and the further separation from the Baltimore conference beginning at Staunton in 1861, and completed at Alexandria in 1866. In consequence of embarrassments heretofore mentioned by the Reporter in a note, a fair understanding of the merits of the controversy is difficult of explanation, but they appear to be as follows: At the time of the general separation of the M. E. Church South from the M. E. Church proper, in 1844, it was agreed that within the territory of any of the border conferences (and in this cause the Baltimore conference was conceded to be a border conference), a majority of the society, station or conference within which any church property lay, might determine for itself to which body it would become attached; and that the Baltimore conference at its session in 1845, elected to go with the church north, or remain attached to the M. E. Church; and it was not proved in this cause that the society or station at Lewisburg ever elected to separate from that connection by any formal vote of separation. Whilst in this connection the deed was made to it in 1851. The Baltimore conference at its session in 1861 at Staunton, passed the following resolution: "Be it resolved by the Baltimore Annual Conference in conference assembled, that we hereby declare that the general conference of the Methodist Episcopal Church, held at Buffalo in May, 1860, by its unconstitutional action, has sundered the ecclesiastical relation which has hitherto bound us together as one church, so far as any act of theirs

could do so. That we will not longer submit to the jurisdiction of the said general conference, but hereby declare ourselves separate and independent of it; still claiming to be, notwithstanding, an integral part of the Methodist Episcopal Church." The conference so held at Staunton resolved to meet the following year at Baltimore, where it accordingly met in 1862, and by a large majority repudiated and disavowed the protest of the body at Staunton.

It was proved by one *P. S. E. Sixeas*, who was a member of the conference at Staunton, that he was at the conference held at Alexandria in 1866; that it was a disputed point whether it was the Baltimore conference that met at Alexandria—the Methodist Episcopal Church claiming that it was not, and the Methodist Episcopal Church—claiming that it was; that there was not a majority of the Staunton conference of 1861 at the Alexandria conference of 1866; that the vote at the latter was unanimous on the separation which was there pefected under the name of the Methodist Episcopal Church South, That the Alexandria conference met at Alexandria on the 8th day of February, 1866, and the Baltimore conference at the latter place on the 28th day of February, 1866.

It was further proved that a large majority of the members of the church and congregation, prior to 1861, were now connected with the Methodist Episcopal Church South, only four having adhered to the Methodist Episcopal Church; that the Methodist Episcopal Church South had one hundred and thirty-eight white members and about sixty colored. That the trustees sought to be removed held the church for the use and benefit of the Methodist Episcopal Church south.

The defendants applied to the court below for an order suspending the operation of the judgment for sixty days, which was granted upon their entering into bond as required by law. They then applied for a supersedeas to one of the judges of this court, which was allowed on the usual conditions. They alleged for error in the judgment of the court below, the following:

1st. That while the ninth section of chapter 78, Code of 1860, gave the court power to remove and appoint trustees by notice of motion, yet the court had no authority to transfer the property from one church to another by motion; that the proper proceeding for the present case was by bill in equity.

2d. That the notice was served by the attorney for the Methodist Episcopal Church, and that in proceedings affecting the right of property, there must be parties before the court capable of suing and being sued; the Methodist Episcopal Church was neither a natural person nor a corporation capable of suing.

3d. Two of the trustees removed were creditors of the church, and by the discipline could not be removed until they were paid.

4th. The quarterly conference recommending the removal was irregularly constituted, and had no authority to make such order.

5th. The discipline of the church required that the quarterly conference should be held at the same place where the quarterly meeting was held; and here they were held five miles distant.

6th. The opinion of the court was erroneous on the testimony.

7th. The notice ought to have been quashed because it said that the application would be made to the judge, when it should have been made to the court.

*Lamb & Paull* for the appellants.

*Stanton & Allison* for the appellees.

BROWN, President.

This court adopts much of the well considered opinion of the circuit court, rejecting such parts as are not approved.

The court is of opinion that under the 9th section of the Code of 1860, p. 412, upon which this motion is founded, reasonable notice of the application is all that is required;

the defendants below having appeared by counsel on the 11th of September, when the motion was first called and the notice proved, and having asked and obtained a continuance of the case until the 13th, without offering any objection to the notice, ought therefore to be considered as waiving all objection to the notice, even if otherwise insufficient. The trial of the motion on the day selected by the defendants, the number of counsel, both legal and clerical, who were permitted to appear in their defence, and above all, the admission of all the evidence, whether oral or documentary, which can be supposed to have any bearing upon the case, preclude all idea that any prejudice could have resulted to the defendants, either from the character of the notice, or from a trial thereof at that term.

The court is further of opinion that there is nothing in the objection that the plaintiffs in this case were bound to proceed by bill in chancery instead of motion. The removal or appointment of trustees is an old and well established branch of equity jurisprudence, which required no statutory enactment to warrant the institution of such a suit, and the court cannot presume that by the 9th sec. of chap. 78 of the Code of 1860, the legislature simply intended to authorize a proceeding under the statute, which was in force without it. In the opinion of the court, the object of that statute was to provide a summary remedy upon motion, by which, at the instance of the proper authorities of the congregation, and in the exercise of a sound discretion by the court, trustees might be removed or appointed upon reasonable notice, without the necessity or expense of a regular suit.

The court is further of opinion that it is clearly shown by the evidence that this motion was made at the instance, and upon the application of the proper authorities of the church at Lewisburg, and that it was necessary to the proper exercise and enjoyment of their ecclesiastical as well as legal rights in the said church.

The court is further of opinion that by the deed of February 5th, 1851, the legal title to the church in controversy became vested in trustees for the use and benefit of the con-

gregation at Lewisburg in connection with the Methodist Episcopal Church of the United States; and that, until legally divested in some way, it must continue to be held as a trust for the use and benefit of the said church so long as it continues to have existence; and that if at any time it should cease to exist entirely, and thus the purpose for which the property was conveyed became completely frustrated, that the property in that case would constitute a resulting trust in equity, and revert back to the original donor or his heirs. See 2 Story's Eq., §§ 1175, 1196, 1200; Supplement to U. S. Dig. (1847), p. 436, § 308; 2 Story's Eq., § 1191, and note, § 1192 Id.

The court is further of opinion that a charity given for a particular purpose cannot be altered or diverted to any other. 2 Story, § 1175.    That an organized church cannot be divested of its property by even a majority of its members who enter into a new organization, although they adopt the same name, provided the old organization still exists; and that when seceders from an organized church enter into such new organization, they forfeit all claim to any interest in the former church, and lose all identity with it. *Harper* vs. *Straws*, 14 B. Monroe, 48.

The court is further of the opinion that by a resolution of the New York general conference in 1844, a plan of separation was agreed upon, which, if *strictly complied with on the part of the church south*, would have taken this case out of the operation of the principle of *Harper* vs. *Straws*, and brought it clearly within the principle of *Brooke* vs. *Shacklett*, 13 Gratt., 307, which was cited and relied upon with so much confidence.

But the court is furthermore of opinion, that upon the facts shown as evidence, the case of *Brooke* vs. *Shacklett* is an express authority against the appellants, and establishes the right of the appellees to the church in controversy. That case simply decided that in the case of a border conference, such as this is, that a separation of the churches pursuant to the plan of 1844, that is, by *a vote of the majority of the society, station, or conference within which the property*

*lies,* not only established a separate ecclesiastical institution in the church thus separating, but carried with it all the church domain within the limits of such conference, station, or society.   That the vote of *such majority,* whether adhering to the original church, or joining the church south, not only determined the particular ecclesiastical complexion, but the future rights of property in the local church.

There is nothing to show in this case that the vote of *such majority* has ever been cast, at least, in favor of the southern church.   Certainly no station or society has thus spoken. And the court is of opinion, from the various annual registers and other proceedings which were offered in evidence, from the general conference at New York in 1844, down to the Alexandria conference in 1866, that by the vote of no majority of the Baltimore conference has the church in controversy, which undoubtedly once belonged to that branch of the original church, ever *legally* became an appurtenant of the Methodist Episcopal church south, or of its local authorities in Lewisburg.   It was claimed for the defendants below, that the process of separation by which they claim the church in question, was *initiated* at the conference in Staunton in 1861, and consummated by the Alexandria conference in 1866.   Is this pretension supported by the evidence? Whilst the Staunton conference disavowed and strongly protested against the doctrine of the old church on the subject of slavery, it still declared itself "to be an *integral part of the said* church," and *as such,* when it adjourned at Staunton in 1861, it resolved that its next general annual conference should be held in Baltimore.   It, that is, the same Baltimore conference which adjourned at Staunton in 1861, met pursuant to its adjournment, in conference, at Baltimore in 1862, and then and there, by the vote of a large majority of such conference, this protest or disavowal of the Staunton conference was in turn repudiated and disavowed, leaving the question, of course, as it stood before.   In the proceedings and resolutions of these conferences for the year 1861 and 1862, it would be more correct to say, therefore, that

the separate organization of the Methodist Episcopal Church south, in this department, was both *inaugurated* and *perfected* by the Alexandria conference in 1866; and at that conference, although claimed by the church south to have been the Baltimore conference, the record shows that a large majority of the Baltimore conference proper were not present, and never recognized any of the resolutions or proceedings at Alexandria *as the act of the Baltimore conference.* All the Alexandria conference did, therefore, was to sever the ecclesiastical bond which bound it to the parent church, without acquiring any of the property of that Church according to the plan of separation of 1844, or under the decision of the court of appeals of Virginia in *Brooke* vs. *Shacklett.*

The court is further of opinion from the evidence, that so far as the Baltimore conference is concerned, that the separation or election as contemplated by the general conference of 1844, was in fact accomplished in 1845, and resulted in a formal resolution by a majority of the Baltimore conference, to adhere to the northern division of the church, which settled its ecclesiastical status and carried with it the right of property in the church in question.    See Annual Register of Baltimore conference, p. 20; also *Brooke* vs. *Shacklett,* 13 Gratt., 307, 325, 326, where the proceedings of the Baltimore conference of 1845 are fully stated.

Nor is there anything in the record to show that the church at Lewisburg was a border station, within the meaning of the plan of separation adopted by the general conference in 1844; nor that said congregation ever took any action as therein prescribed, to change its then existing ecclesiastical relations by adhering to, or uniting with, the church south; but on the contrary thereof, it must be supposed to have acquiesced in the action of the Baltimore conference, to which it belonged, and that it did so, in fact, is proved by the evidence of the presiding elder, Rev. Mr. Waugh, of the church south, who was sent in 1848, to the Lewisburg church, or station, as minister of the M. E. Church, and as such received by it, but who since that

time seems to have left it and united with the church south. It is further proved by the fact that they received the deed for the church property, reciting the trust and use, for the M. E. Church, and excluding the idea of adherence to the church south at the date of the deed; and by the further fact that it is not even claimed by the parties, or any of them, that there ever was any attempt to change the ecclesiastical connection from the church north to the church south before 1861, when it is said the thing was first inaugurated in the conference at Staunton, and only claimed to have been completed by a controverted conference at Alexandria in 1866. Conceding them all that could possibly be claimed to legitimate the attempted change of ecclesiastical connection from one organization to the other, on the part of the Lewisburg station or congregation, and suppose it a border station, and in 1866, in pursuance of the action of the Alexandria conference, took action by a vote of the congregation called by the minister of the M. E. Church, rightfully having that church in charge, and upon due notice, and after full and fair consideration of the whole subject, a large and decided majority of the members resolved to cut the connection with the M. E. Church north, and unite with and adhere to the church south from thenceforth, and conformed their action to this resolve, could that have the effect to change the ecclesiastical relations and connections of the minority in the same manner, without their consent, and against their will? Such would undoubtedly be the case if the act were authorized by the plan of separation adopted by the general conference in 1844, but would not be the fact if not so authorized. And this depends upon the fact whether that plan of separation is to continue open and existing for action and counteraction by border stations, and ever shifting borders for all time past and future, or whether action once taken is final, and the period for such action, *in a reasonable time*, after the plan of separation was adopted and executed?

Upon this point it is most manifest that the plan of sep-

aration was a plan of peace, to end strife. And the relations of the conferences, churches, stations, and societies along the defined and specified border, being once settled by the choice of those authorized so to act, by adhering to the one side or the other, was final and conclusive, and could never after be changed, or counteracted, under, or by virtue of that plan and authority. Nor was it contemplated to keep the question open to be shifting from side to side, from time to time, as one side or the other may have a majority. Such a construction would be to defeat the end in view—of peace and settlement—increase the dissensions among the people, and make confusion worse confounded. Upon no hypothesis, then, could the action of any portion of the members, whether small or great, influential or not so, male or female, black or white, of the Lewisburg church change the ecclesiastical connection of that church though reduced to a minority, from its former relations and connection with the M.E. Church to the M.E. Church south; neither could it thereby in anywise whatever, change or affect the property held in trust for the use of such congregation. The action (if any has been taken) uniting with and adhering to the church south, could only affect the parties so acting. They have the power to join whatever church they please, however it may be in disregard of the rules and constitution of the church to which they may have formerly belonged, but they cannot by so doing affect the rights of others, nor divert the use of property held in trust for a particular and specified purpose, to another and different purpose, or use.

The conclusion, therefore, is, that the particular congregation at Lewisburg, having been a church in connection with the M. E. Church, and having never changed that connection under the plan of 1844, to the church south, still continues a church in its original connection, and is the same church, and in the same church connection, as mentioned and described in the deed of trust in question. And the proper authorities of said church having applied for and obtained the re-

moval of the appellants, and the appointment and substitution of the appellees as trustees in said deed for the uses therein mentioned, there has been no injustice done to any one, nor is there error in the judgment complained of.

The judgment, therefore, of the circuit court of Greenbrier county should be affirmed, with costs and damages to the appellees.

Judge Maxwell concurred.

ORDER AFFIRMED.