BENJAMIN F. BROWN ET AL., TRUSTEES,

*vs.*

·EDWARD W. SCOTT ET AL., TRUSTEES.

### *Church Property—Right of Control.*

A bill by church trustees, in whom the title to the church property was vested, to prevent the violation of a trust by the diversion of the property to the uses of a religious denomination other than that named in the charter and constitution of the church, to obtain possession of the property, and to set aside a deed by former trustees conveying the property for such improper uses, *held* properly sustained. ·

*Decided January 10th, 1923.*

Appeal from the Circuit Court No. 2 of Baltimore City (STEIN, J.).

Bill by Edward W. Scott and others, Trustees of the Tyson Colored Methodist Protestant Church, and said church, against Benjamin F. Brown and others, Trustees of the Tyson African Methodist Episcopal Church, and said church. From a decree for plaintiffs, defendants appeal. Affirmed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Charles G. Baldwin,* with whom were *Baldwin & Sappington* on the brief, for the appellants.

*John D. Nock* and *John I. Rowe,* with whom were *Benson, Nock & Rowe* on the brief, for the appellees.

THOMAS, J., delivered the opinion of the Court.

This is the second appeal in this case. The first appeal (138 Md. 237) was from an order of the court below overruling a demurrer to the amended bill of complaint, while the present appeal is from the decree of that court granting the relief prayed therein.

The bill was filed against Benjamin F. Brown and others, individually and as trustees of the Tyson African Methodist Episcopal Church, a body corporate, and the Tyson African Methodist Episcopal Church of Baltimore City, and after the case was remanded the defendants answered the bill and evidence was produced by the plaintiffs and defendants before, the court below. While the testimony is somewhat confusing, and some of it, perhaps, strictly speaking, not entirely free from objection, the evidence, in connection with the admissions in the answers and the admissions of counsel, sufficiently establishes the essential facts indicated in the opinion of the court in the former appeal.

It appears that the Tyson Colored Methodist Protestant Church of Baltimore County, which, with certain persons alleged to be the trustees of said church and the Baltimore Annual Conference of the Colored Methodist Protestant Church, a body corporate, was made a plaintiff in the case, was incorporated in January, 1899, and thereafter there was conveyed to it, by deed dated the 15th of June, 1899, the church property in controversy in this case, on Falls Road, now in Baltimore City, subject to the annual rent of fifty dollars, and on the 2nd of June, 1906, Thomas M. Lanahan, by deed of that date, conveyed to said plaintiff the fee simple title to said property, which, it is admitted, was at the time of the trial in the court below worth $5,000; that the Tyson Colored Methodist Protestant Church of Baltimore County, hereinafter referred to as the plaintiff church, continued in possession and enjoyment of its said property until about May, 1918, when five of the trustees of the plaintiff church either resigned or refused to act with the remaining trustees, and took possession of said church property, and on May 24th, 1918, the said five trustees (hereinafter referred to for the sake of brevity as the seceding trustees), and others in sympathy with them, passed a resolution, entered on the minutes as a resolution of the "Leader's Board," directing "a letter with the church seal" to be sent to the Annual Conference of the Colored Methodist Protestant Church, asking them not to

send any minister to the church for that year; that in July, 1918, the seceding trustees and others acting in sympathy with them employed a minister of the African Methodist Episcopal Church to take charge of and conduct the services of the plaintiff church, and on July 26th, 1918, passed a resolution confirming said minister as the pastor of said church "until the Annual Conference of the African Methodist Episcopal Church"; that on September 20th, 1918, a resolution was passed by said trustees and those in sympathy with them promising said minister or pastor to come into the African Methodist Episcopal Church; that on November 1st, 1918, the minutes of a meeting of said seceding trustees and those in sympathy with them were recorded as the minutes of a meeting of the leaders of "Tyson A. M. E. Church"; that on February 2nd, 1919, persons were admitted by said seceding trustees and others in sympathy with them as members of the Tyson African Methodist Episcopal Church, and that on February 14th, 1919, a resolution was passed by them to "Bank $25.00 in the Providence Savings Bank in the name of Tyson A. M. E. Church"; that on April 14th, 1919, at a meeting of said seceding trustees and others in sympathy with them, twenty-seven of them, claiming to be members of the plaintiff church, and to be four-fifths of the congregation thereof, passed a resolution to sell said church property to the Tyson African Episcopal Church for the sum of $5.00; that on the following day, April 15th, said seceding trustees and four others, including the minister of the African Methodist Episcopal Church who had conducted the services in the plaintiffs' church property since July, 1918, incorporated "The Tyson African Methodist Episcopal Church of Baltimore City," and on the same day a paper purporting to be the deed of the plaintiff church was signed by one of the said seceding trustees as its president and acknowledged by another of said trustees as the attorney named therein, attempting to convey the said property of the plaintiff church to the said The Tyson African Methodist Episcopal Church of Baltimore City for the consideration of $5.00; that even the

nominal consideration mentioned in said deed was never paid; that the said seceding trustees and others in sympathy with them and the said The Tyson African Methodist Episcopal Church of Baltimore City have been in possession of the property of the plaintiff church ever since May, 1918, to the exclusion of the remaining trustees of the plaintiff church, and the trustees elected in the place of the seceding trustees, and other members of the plaintiff church in sympathy with said remaining trustees; that in May, 1918, there was a mortgage for $500 on the property of the plaintiff church, and there was in bank to the credit of the plaintiff church the sum of $200, and that in November, 1918, said mortgage was paid by the seceding trustees and others acting in sympathy with them, who used the said $200 for that purpose, and the mortgage was released.

It further appears from the evidence that the vacancies caused by the resignation or refusal of the seceding trustees to act with the remaining trustees of the plaintiff church were filled by the election of other trustees by the remaining trustees in January, 1918; that, ever since the seceding trustees and others acting in sympathy with them took possession of the property of the plaintiff church, said church has held its services in other church buildings; that notwithstanding the notice sent to the Annual Conference of the Colored Methodist Protestant Church by the seceding trustees and others not to appoint a pastor for the plaintiff church, a pastor was appointed, and that at the time of the trial of the case in the court below the plaintiff church was still a member in good standing in the Baltimore Annual Conference of the Colored Methodist Protestant Church.

Upon the evidence referred to the court below passed the decree from which the present appeal was taken, enjoining the defendant trustees from acting and representing themselves as the trustees of the plaintiff church, and enjoining them from interfering with the trustees of the plaintiff church in the performance of their duties as trustees of said church; requiring the defendants to surrender to the plaintiff

church, its pastor or any one of its trustees, possession of the church property and the keys of the church building, and to refrain from interfering with the control and custody of said property by the plaintiff church, its officers or agents; requiring the defendants to turn over and deliver to the plaintiff church the furniture, papers, records and books of said church; requiring the defendants (or their successors in office) to deliver to the plaintiff church the release of the mortgage from Mary W. Bussel to said church, dated November 12th, 1918, upon the payment by said church of the difference between the amount paid for the release and the proper expenses thereof and the amount of money belonging to said church which was in the hands of the defendants on May 24th, 1918; ordering and decreeing that the paper purporting to be a deed from the plaintiff church to The Tyson African Methodist Episcopal Church of Baltimore City, dated April 15th, 1919, and recorded among the Land Records of Baltimore City, &c., be set aside and declared null and void, and decreeing that the defendants pay the costs in the case.

In the former appeal, this Court, referring to the averments of the bill, said:

"The plaintiff, the Tyson Colored Methodist Protestant Church of Baltimore County, was duly incorporated on the 30th of January, 1899, and subsequently the church became a member in good standing of the Baltimore Annual Conference of the Colored Methodist Protestant Church; that the plaintiff church owned certain property and, until May, 1918, religious services were held in a frame church building on the east side of Falls Road near Cold Spring Lane and Hillside Road in the New Annex of Baltimore City.

"The bill then alleges that without authority the defendants, Benjamin F. Brown, Charles H. Brown, George N. Brown, John H. Jackson and Franklin E. Jones, five of the eight trustees of the church, notified the Annual Conference of the church, when it convened in May, 1918, not to make any appointment of a pastor for the church, and announced

that they were no longer worshipping according to the creed and discipline of the Colored Methodist Protestant Church, as provided by its charter and constitution, but had become affiliated with the African Methodist Episcopal Church, had elected the defendant, Rev. John Offer Custis, pastor of the church, and are now conducting services in the church building under the name and style of Tyson African Methodist Episcopal Church of Baltimore City, a corporation, incorporated on the 15th day of April, 1919; * * * that the defendants hold the keys of the church building, and they refuse to give possession of the same to the plaintiffs or the Rev. William W. Hoy, the minister who was duly appointed pastor of the Tyson Colored Methodist Protestant Church, claiming to be in sole control of the building and denying to the plaintiffs the right of access to or control of the same; that on the 15th of April, 1919, the defendants, claiming to be the trustees of the Tyson Colored Methodist Protestant Church, for a simulated and pretended consideration, made what purports to be a deed, and undertook thereby to transfer and convey the property of the Tyson Colored Methodist Protestant Church from themselves as trustees to themselves as trustees of the Tyson African Methodist Episcopal Church, which paper writing is absolutely null and void, and of no effect."

In disposing of the objection that the bill was multifarious, the court said: "In the present case, the title to the property is vested in the trustees of the church under section 7 of the articles of incorporation, which provides that all real and personal property and chattels real, now owned or to be hereafter acquired by the church, shall be vested in the trustees or their successors for the use and benefit and advantage of the church and for no other purpose, and the trustees shall not at any time transfer or dispose of any property vested in them as aforesaid without the consent and approbation of at least two-thirds of all the male members of the church over the age of twenty-one years. * * * There was no such misjoinder of parties as to defeat the right of the plaintiff trustees to relief under the facts of the case." After stating that the

law was well settled that under the facts stated and alleged in the bill, a court of equity had jurisdiction to grant the relief sought, the court said further: "In 34 *Cyc.* 1167, the general rule is thus stated in cases of this kind: 'Another ground for equitable relief is the failure of two factions of a church to agree to the proper use of the church property. In such cases equity will take jurisdiction and protect the party entitled to possession, regardless of whether it constitutes a majority or a minority.' In *Watson* v. *Jones,* 13 Wall. (U. S.) 723, the Supreme Court discusses and disposes of the controlling questions here presented and held that 'an individual or an association of individuals may dedicate property by way of trust to the purpose of sustaining, supporting, and propogating definite religious doctrines or principles provided that in doing so they violate no law of morality, and give to the instrument by which their purpose is evidenced, the formalities which the law requires. And it would seem also to be the obvious duty of the court, in a case properly made, to see that the property so dedicated is not diverted from the trust which is thus attached to its use. So long as there are persons qualified within the meaning of the original dedication, and who are also willing to teach the doctrines or principles prescribed in the act of dedication, and so long as there is any one so interested in the execution of the trust as to have a standing in court, it must be that they can prevent the diversion of the property or fund to other and different uses.' In *Venable* v. *Coffman,* 2 W. Va. 310, it was distinctly held that any number of the members of a church, whether small or great, have the power to join whatever church they may please, however it may be in disregard of the rules and constitution of the church to which they may have formerly belonged, but they cannot by so doing affect the rights of others, nor divert the use of property held in trust for a particular and specified purpose, to another and different purpose or use. * * * In the leading case of *Watson* v. *Jones, supra,* the Supreme Court said: 'The appellants in the case presented to us have separated themselves wholly from the church or-

ganization to which they belonged. They now deny its au-
thority, denounce its action, and refuse to abide by its judg-
ment. . They have first erected themselves into a new organi-
zation, and have since joined themselves to another totally
different, if not hostile, to the one to which they belonged
when the difficulty first began. Under any of the decisions
which we have examined, the appellants, in their present
position, have no right to the property, or to the use of it,
which is the subject of this suit.' "

We have quoted at some length from the opinion of the
court on the former appeal because it fully covers the facts
of the case to which we have referred and sustains the decree
of the court below granting the plaintiffs relief. The only
fact referred to in the opinion of this Court, not mentioned in
the evidence to which we have referred, is the alleged an-
nouncement by the defendants to the Annual Conference that
they were no longer worshipping according to the creed and
discipline of the Colored Methodist Protestant Church as pro-
vided in its charter, but had become affiliated with the Afri-
can Methodist Episcopal Church. But the evidence men-
tioned does show that they notified the Annual Conference
not to appoint a pastor for the plaintiff church, and that they
promptly thereafter employed a minister of the African
Methodist Episcopal Church as their pastor, and that he con-
tinued to serve as their pastor until they and those in sympa-
thy with them formally allied themselves to his church.

The defendants filed a number of exceptions to the evi-
dence, but none of them is seriously pressed in the brief of the
appellants. A number of them are too general, and we do
not find in any of them such error as would, under the opinion
from which we have quoted, justify a reversal of the decree
from which this appeal was taken.

*Decree affirmed, with costs to the appellees.*