EDWARD N: BIREN *et al.*, Plaintiffs-Appellants, *v.* HOWARD H. KLUVER *et al.*, Defendants-Appellants.

Second District (1st Division) No. 73-432

Opinion filed February 6, 1976.

N. Richard Elliott, of Vincent, Roth & Elliott, of Galena, for appellants.

Vaughn N. Woodruff, of Chicago, for appellees.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

Plaintiffs sued to reform and correct an agreement for a warranty deed. They allege that the agreement was to sell a 120-acre tract to the defendants, Howard H. Kluver and E. R. Jacobs, for $100 per acre but that by mistake the description included substantially more acreage. The property was part of the larger farm owned by the plaintiffs, a portion of which had been previously sold to the defendants, Meyer J. Barrash and Annette M. Barrash.[1]

Following a bench trial the court decreed that the agreement be reformed to evidence the sale of tract one as finally determined at $100 per acre. The plaintiffs moved to modify the decree and for a rehearing, which motion the court denied. Plaintiffs appeal, contending that the evidence clearly established that they were mistaken as to the amount of acreage in tract one which the parties viewed, but that it was understood that it was to be no more than a 120-acre tract. They further contend that the defendants were guilty of fraud in that they knew that the tract contained substantially more than 120 acres. Plaintiffs seek to have the agreement reformed so as to cancel the sale of tract one to the extent it exceeds 120 acres.

The defendants Kluver and Jacobs have not filed a brief. However, we have exercised our discretion to review the case on its merits.

The complaint to reform and correct the agreement for warranty deed as to tract one in substance alleged that plaintiffs had orally agreed to sell 120 acres of land at $100 an acre, the total purchase price being $12,000, the exact legal description to be determined by survey; that thereafter a written agreement for warranty deed dated February 26, 1966, was executed but contained an incorrect legal description which included substantially more than 120 acres; and that a survey of the 120 acres of woodland which plaintiffs had agreed to sell was described and

---

[1] The Barrashes were made defendants on the theory that there might be some difficulty in overlapping descriptions but were later dismissed from the law suit. The complaint also referred to a second tract which was sold to the defendants, Kluver and Jacobs for an additional price of $5500, which upon survey was found to contain 34.201 acres. The trial court included the reformation of that agreement changing the $5500 sale price expressed in the agreement to $100 per acre. No question is raised as to that portion of the decree.

attached as an exhibit. The complaint prayed that the agreement be reformed to show the legal description in the corrected survey and that the plaintiffs be authorized to execute a proper warranty deed pursuant to the agreement to be corrected and reformed.

Defendants answered the complaint, denying that there had been any agreement for the sale or purchase of land at a per acre price. They stated that the agreed purchase price was $12,000 for the entire tract as described in the agreement for the warranty deed, and prayed for specific performance of the articles of agreement.

The plaintiff, Edward N. Biren, who was a farmer in his late seventies, testified that he had listed the tract in question with a realtor named Bauer; that Bauer brought Kluver and Jacobs to him at the farm and that the purchasers walked over the piece of real estate that was to be sold by themselves; that Biren told them that he didn't know what was in there but he only wanted to sell 120 acres. On adverse examination Edward Biren testified that he had described the land in question with the phrase "[B]oys, you are buying all the woods across the road." He said he did not walk the boundaries of the "wood lot west of the Galena-Blanding Road" with the purchasers, but said that they did. His eyesight was too poor to see the description in the articles of agreement.

Anna Biren, his wife, testified that her husband had told the purchasers that he only wanted to sell 120 acres.

Robert Bauer, the realtor, testified that in his discussions with Mr. Biren they were talking about selling 120 acres of wooded land; that Biren showed the land he wanted to sell to the purchasers by pointing and saying that it did not include any tillable ground but merely rough ground or wooded area and that it was wooded land west of Blanding Road.

James Richardson, the attorney for the Birens in connection with the sale, testified that he prepared the articles of agreement with the assistance of Kluver and Jacobs as to the description. He testified that Biren said he was selling 120 acres of woodland for $100 an acre. Defendant, Howard Kluver, testified that the property to be sold was the woodland area or nontillable area of the Biren farm west of the Galena-Blanding Road and that it was marked on an aerial photograph. He testified that Biren told him that they were buying all the woodland west of the Galena-Blanding Road; that after this he walked the boundary of the woodland with Jacobs and at one point Biren was with them. He testified that Biren did use the term "120 acres more or less" but that they were talking about buying the total tract of woodland across the road. He said that there was talk of $100 an acre but it was the understanding that the woodland across the road would be purchased for $12,000.

Kluver testified that he paid taxes for the tract as it was described in the agreement for warranty deed which included more than 120 acres and posted no trespassing signs on the same described property west of the Galena-Blanding Road. On cross-examination Kluver admitted that in these negotiations Biren had used the terminology "120 acres more or less," but that "99%" of the time Biren had referred to the tract "as all of the woodland west of the Galena-Blanding Road."

Kluver admitted that at some time after the original oral agreement to purchase when he walked over the tract he knew that it contained more than 120 acres but that he did not discuss this with Biren. He said he didn't know how much more than 120 acres and that Biren had spoken of 120 acres for the purpose of identification.

Defendant Jacobs testified that Biren had repeatedly stated, "[B]oys, you are buying all of the timber land west of the Galena-Blanding Road" and that Biren said he would dispose of his woodland but not the tillable land; that plaintiffs' counsel drew up the description and written agreement from the tract outlined on the aerial photograph of the farm; and that he understood that the part outlined was all of the wooded tract west of the Galena-Blanding Road. He said that he knew that tract one consisted of more than 120 acres but did not know the exact time when he and Kluver realized this since they walked over the area two or three times. He also said that Biren had referred to the tract as a 120-acre tract "for identification purposes," but that he did not tell Biren that the tract was larger. He said it was the purchasers' intention to buy the land which they saw for $12,000.

The purchase offer was placed in evidence and contained the offer to purchase "120 A. for $12,000."

The trial court in a memorandum opinion concluded:

"* * * that clear and convincing evidence has been introduced showing that at the time that the parties first met and throughout subsequent transactions prior to the survey of the property in question, the property west of Galena-Blanding Road was to be sold to the defendants with the following understandings: All parties believed that plaintiffs were conveying to the defendants the wooded land west of the said road and all parties believed that said wooded land contained 120 acres more or less. Subsequent survey showed that the land did in fact contain substantially more than 120 acres and, therefore, there was a mutual mistake of fact. * * *

Accordingly, the court will reform the agreement between the parties by providing as follows: Plaintiffs are to convey to the defendants all of the wooded land surveyed west of the Galena-

> Blanding Road and the defendants are to pay to the plaintiffs the sum of $100 per acre on the basis of the acreage found in the survey. * * *"

Plaintiffs moved for rehearing, alleging that the evidence showed that they had not agreed to convey any more than 120 acres, all of which was to be wooded and that there was nothing in the evidence or the survey to show the nature of the land west of the road with particular reference to whether it was wooded or not wooded and thus that it was impossible for them to comply with the decree.

The trial court denied the motion in a supplemental memorandum, stating that:

> "The exhibits disclose that the tract of 205.23 acres of wooded land west of Galena-Blanding road contains at most one to two acres of non-timber character. This acreage would be generally in the south section of the land almost immediately west of the farm buildings retained by the plaintiffs. Because of the relatively small size of this non-timber land it would have little or no bearing on the decision of the court * * *."

Plaintiffs argue that the record shows that they have established by clear and convincing evidence that there was a mistake of fact on their part accompanied by fraud or inequitable conduct on the part of the purchasers and that therefore the articles of agreement should be reformed by cancellation as to the property in excess of 120 acres not intended to be conveyed.

■■ A written instrument may be reformed to conform with the intention of the parties upon proof by clear and convincing evidence of a mutual mistake of fact. ( See *Lux v. Lelija*, 14 Ill. 2d 540, 547 (1958); *Stoerger v. Ivesdale Co-op Grain Co.*, 15 Ill. App. 3d 313, 316 (1973).) A mutual mistake exists when the contract has been written in terms which violate the understanding of both parties. (*Korsgaard v. Elliott*, 17 Ill. App. 3d 1061, 1063 (1974).) The instrument may also be reformed upon proof of a mistake by one party to the contract when the other party knows of the mistake and fails to inform the other party or conceals the truth from him. 13 Williston on Contracts §1573 (3rd ed. 1970); Restatement of Contracts §505 (1932); *Gablick v. Wolfe*, 469 P.2d 391, 394-395 (Alas. 1970); *Lemoge Electric v. County of San Mateo*, 46 Cal. 2d 659, 297 P.2d 638, 640-641 (1956).

Here the plaintiffs are seeking to reform the instrument but in a different manner than that decreed by the trial court. They seek to have the instrument reformed by cancelling it as to "the property not intended to be conveyed" in excess of 120 acres (citing *Keeley v. Sayles*, 217 Ill. 589 (1905)). However, the court concluded, and we think properly, that

plaintiffs did, in fact, intend to convey the entire tract which was described after a survey, at an agreed price of $100 an acre, but that the mistake involved the number of acres in the tract.

██ We conclude from our review of the record that there was clear and convincing evidence that the plaintiffs intended to sell the entire tract which was described in the articles of agreement for warranty deed and that this was the property intended to be purchased by the defendants. The plaintiffs were mistaken in believing that the tract was approximately 120 acres in size; the defendants were aware that the tract was substantially larger and did not disclose this fact to plaintiffs and in fact aided in concealing it by themselves making repeated reference to a 120-acre tract which they sought to excuse as a reference for identification purposes. The intention to pay the then value of the land of $100 an acre fairly appears from the record. It was therefore equitable for the court to reform the agreement of the parties to conform to the intention to sell the property which the parties had identified and agreed upon, but which was mistakenly referred to as a 120-acre tract, at the agreed price per acre.

We therefore affirm the decree.

Affirmed.

GUILD and HALLETT, JJ., concur.