B. L. KELLEY, *et al.*, Plaintiffs and Counterdefendants-Appellees, *v.* RIVERSIDE BOULEVARD INDEPENDENT CHURCH OF GOD *et al.*, Defendants and Counterplaintiffs-Appellants.

Second District (1st Division)   No. 75-419

Opinion filed December 28, 1976.

Craig A. Ridings, of Yalden & Ridings, of Rockford, for appellants.

Alfred W. Cowan, Jr., of Maynard, Brassfield & Cowan, of Rockford, for appellees.

Mr. PRESIDING JUSTICE GUILD delivered the opinion of the court:

This is a religious property dispute. The plaintiffs are B. L. Kelley, Harold Downing and Larry Petty, who are the members of the State Board of Trustees for the Church of God, State of Illinois, hereinafter collectively referred to as plaintiffs. The plaintiffs filed a declaratory judgment action asking that certain deeds be set aside and that conveyances be made to them of certain real estate situated in the City of Rockford. They also sought an accounting for the personal property controlled by certain of the defendants. The defendants in this case, as they are included in the amended complaint, are the Riverside Boulevard Independent Church of God, an Illinois not-for-profit corporation, the City National Bank & Trust Company of Rockford, as trustee under a certain trust agreement dated October 13, 1972, A. J. Lovelady, Vernon Hersey, Aaron J. Gray and Olis Hersey, individually and as trustees of the Virginia Avenue Church of God, and also the Virginia Avenue Church of God, an Illinois religious corporation. Except when otherwise necessary because of their individual status in this litigation, these people will be collectively referred to as the defendants.

Certain of the defendants filed a counterclaim against the original plaintiffs in this suit and named as additional parties Wayne S. Proctor, Harold Thompson, as Illinois State Overseer, Church of God, an unincorporated religious association having its general headquarters in Cleveland, Tennessee, and the named members of the General Board of Trustees of said Church of God, the unincorporated religious association. This counterclaim sought reformation of certain deeds involved in this suit, to quiet title to the disputed real estate in defendants, and also damages and an accounting.

After the various parties had filed answers and replies to the complaint and counterclaim, defendants moved for a partial summary judgment as to one parcel of the real estate involved herein. Attached thereto was a copy of the deed conveying that parcel of real estate to the trustees of the Virginia Avenue Church of God and a copy of the affidavit of incorporation of the Virginia Avenue Church of God. Plaintiffs filed an answer to defendants' motion for summary judgment and moved for summary judgment in favor of themselves on all issues. Attached to plaintiffs' motion was an affidavit of H. B. Thompson, the Illinois State Overseer of the Church of God, and part of the discovery deposition of defendant Olis Hersey. Thompson's affidavit included portions of the minutes and supplements to the minutes of the Church of God, which had also been attached as exhibits to the amended complaint. Defendants filed an answer to plaintiffs' motion for summary judgment, asserting that Thompson's affidavit was not based on his personal knowledge, that he would not be a competent witness to testify to many matters stated

therein, and that many of said matters were conclusions and not statements of fact. Defendants' answer also asserted that there were several issues of fact still before the court, and that the plaintiffs' motion for summary judgment did not set forth any facts in contradiction of those contained in their own motion for summary judgment on part of the case. Defendants, however, did not attach any affidavits to their answer. The trial court granted the plaintiffs' motion for summary judgment and denied the defendants' motion for summary judgment. The effect of the trial court's ruling was to give the plaintiffs control of the real estate which is the subject of this action. The trial court, however, denied the plaintiffs' additional prayer for an accounting of the personal property. All of the defendants, except the City National Bank & Trust Company of Rockford, have appealed from the portions of the order which are adverse to them and the plaintiffs have filed a notice of appeal from the portion of the order denying their prayer for an accounting.

The facts in this case are somewhat complicated but we will endeavor here to set them forth in chronological order. The two predecessors of the Virginia Avenue Church of God were the Rockford Northside Church of God and Rockford Parkside Church of God, which were both alleged to have been members of the Church of God of Cleveland, Tennessee, and to have become such respectively on November 24, 1957, and July 17, 1959. Also, on November 24, 1957, the Virginia Avenue Church of God, an Illinois religious corporation, was organized and three trustees were elected. Defendant, Olis Hersey, executed an affidavit to this effect one year later on November 24, 1958, but said affidavit was not recorded until August 8, 1962.

On October 24, 1960 the first of the deeds in controversy in this suit was executed and recorded. The grantors in the 1960 deed were Vernon Hersey and Olis Hersey, husband and wife and the premises conveyed consisted of Lots 26 and 27 of the Sunset Hills Second Addition in Rockford, hereinafter referred to as the Virginia Avenue property. The deed was entitled "Church of God Warranty Deed" and the relevant portion of it reads as follows:

" * * * the said grantors do GRANT, BARGAIN, SELL and CONVEY unto grantees, Vernon Hersey, A. J. Lovelady and Marvin Gryder, as trustees of the Church of God, and their successors in trust and constituting the Local Board of Trustees of the Church of God at Rockford, in Winnebago County, Illinois, the following described lands * * *."

This grant was subject to the following described limitations:

"The said Local Board of Trustees shall hold title to, manage and control the said real estate for the general use and benefit of the Church of God, having its general headquarters in Cleveland,

Tennessee, and for the particular use and benefit of the local congregation of the said Church at Rockford, Illinois.

The said Local Board of Trustees shall have full right, power and authority to sell, exchange, transfer and convey said property, or to borrow money and pledge the said real estate for the repayment of the same, and to execute all necessary deeds, conveyances, etc., provided the proposition shall first be presented to a regular or called conference of the said local church, presided over by the State Overseer of the Church of God, or one whom he may appoint, and the project approved by two-thirds of all members of the said local congregation present and voting.

If the local congregation at the place above designated shall at any time cease to function or exist, then said Trustees shall hold title to said real estate for the Church of God generally in the State where said real estate is located; and said Trustees shall convey the said real estate upon demand to the State Board of Trustees of the Church of God in said state, which said State Board shall be authorized to either use said real estate, or the proceeds derived from the sale of same (said State Board being authorized to sell and convey the said real estate at any time after title is vested in it), for the founding of another Church of God in the same state, or for the promotion of one already existing.

If at any time the Local Board of Trustees shall cease to exist or to perform its duties, then the State Overseer of the State in which said real estate is located, shall have the power to declare all offices on the said board vacant, and the State Board of Trustees of the Church of God for the state shall automatically then hold title.

The limitations set forth herein are those appearing in the Minutes of the 42nd General Assembly of the Church of God held at the Municipal Auditorium, Birmingham, Alabama, August 28-31, 1948."

The parties seem to be in agreement that on October 24, 1960, Hersey, Lovelady and Gryder, the named trustees, were also the trustees of the Virginia Avenue Church of God, the aforementioned Illinois religious corporation.

On September 21, 1963, Olis Hersey and Vernon Hersey, husband and wife, executed another deed conveying the same property covered by the 1960 deed. The 1963 deed recites that it was made to correct the former 1960 deed and states:

"It was the meaning and intent of the grantors in said former deed and in this deed that the grantee be correctly designated as 'Virginia Avenue Church of God', being the same religious corporation referred to in Affidavit of Incorporation recorded in

> Book 1341 of Recorder's Records at page 349 in said Recorder's Office [the previously mentioned affidavit of incorporation of the Virginia Avenue Church of God]."

The other differences between the two deeds are as follows: (1) in the 1963 deed the named grantees are described as trustees of the "Virginia Avenue Church of God," and not as trustees of the "Church of God"; (2) the first sentence in the limitations section of the 1963 deed recites that the real estate is held for "the general use and benefit of the Virginia Avenue Church of God, having its general headquarters in Cleveland, Tennessee, and for the particular use and benefit of the local congregation of the said Church at Rockford, Illinois"; and (3) the 1963 deed is typewritten, whereas the 1960 deed was on a printed form, with only the names of the grantors, grantees and description of the property appearing in typewriting. However, the 1963 deed is also entitled "Church of God Warranty Deed" and the remaining four paragraphs of the limitations section are exactly the same as those set forth above which appeared in the 1960 deed. The 1963 deed was recorded on October 4, 1963.

On April 27, 1972, Clifford Britton and Charlotte Britton, husband and wife, conveyed the second piece of property involved in this dispute, hereinafter referred to as the Riverside Blvd. property, to "Vernon Hersey, A. J. Lovelady and Aaron J. Gray, as Trustees for the Virginia Avenue Church of God, 4426 Virginia Avenue." This deed was duly recorded on May 1, 1972, and contains certain restrictions and covenants proscribing the holding of religious services in temporary structures on the property and restricting the type of single family residence which might be built upon any portion of the 11-acre property. In this deed, however, there is no mention of the Church of God of Cleveland, Tennessee, and there are no restrictions similar to those set forth above which appeared in the 1960 and 1963 deeds of the Virginia Avenue property. Certain of the documents filed in this matter indicate that the 1972 deed of the Riverside Blvd. property was executed pursuant to the provisions of a contract which had been entered into several years previously. Said contract, however, was not made a part of this record.

October 1972 is the most critical month involved in this litigation. According to the affidavit of the minister of the Virginia Avenue Church of God, defendant Olis Hersey, which was filed in support of the defendants' post-trial motion, in early October 1972 there arose a religious doctrinal dispute concerning Olis Hersey's practice of wearing earrings. On October 12, 1972, Vernon and Olis Hersey, as husband and wife, executed a warranty deed to "the BOARD OF TRUSTEES of the VIRGINIA AVENUE CHURCH OF GOD and to their successors in trust, such being the Illinois religious corporation [previously referred to in this opinion]." This deed covered the Virginia Avenue property

previously conveyed under the 1960 and 1963 deeds and recited that it was made to correct the deed recorded in 1963 wherein the grantee was said to have been erroneously designated as having its headquarters in Cleveland, Tennessee, whereas, in fact, the grantee was the Illinois religious corporation having its headquarters in Rockford, Illinois. The deed further recited that the meaning and intent of the grantors in the former deeds and in this deed was that the grantee was the Virginia Avenue Church of God, the Illinois religious corporation. This deed did not contain any of the limitations appearing in the 1960 and 1963 deeds. On the following day, October 13, 1972, A. J. Lovelady, Vernon Hersey and Aaron J. Gray, trustees of the Virginia Avenue Church of God, executed a warranty deed to the City National Bank & Trust Company of Rockford as trustee. This deed conveyed both the Virginia Avenue property, which was the subject of the 1960, 1963 and October 1972 deeds, and the Riverside Blvd. property, which was the subject of the April 27, 1972, deed. The October 13 deed to the Bank & Trust Company was duly recorded on the afternoon of October 13, 1972. On the same day, according to Olis Hersey's aforementioned affidavit, Rev. Proctor, the State Overseer of the Church of God, had dinner with Rev. Hersey and her husband and asked her to voluntarily discontinue wearing earrings, at which time she indicated that she would not do so. Thereafter, on October 18, 1972, Rev. Proctor, along with several other persons, entered the church during a service. The subsequent proceedings on the evening of October 18 are not entirely clear, but all parties seem to agree that at this time Rev. Proctor, the State Overseer, made accusations against Olis Hersey; declared all offices on the Board of Trustees of the Virginia Avenue Church of God vacant; appointed replacements to those offices; and disfellowshipped the entire congregation of the Virginia Avenue Church of God when the members indicated that they would support the position of their pastor, Olis Hersey.

On December 5, 1972, the City National Bank & Trust Company of Rockford, as trustee, executed and delivered a trustee's deed conveying to the Riverside Boulevard Independent Church of God, an Illinois not-for-profit corporation, both of the parcels previously conveyed to the bank under the deed of October 13, 1972.

The original complaint in this action was filed on March 16, 1973, alleging that the defendants had refused to turn over both parcels of real estate which are the primary subject of this lawsuit to the plaintiffs who claim that they are entitled to said property.

The parties variously state the issues before us on this appeal. Defendants claim that the issues are as follows: (1) whether the court erred in finding that the Church of God was a hierarchical church; (2) whether the trial court correctly interpreted the law of Illinois in allowing

an unincorporated body to take precedence over the incorporated titleholder; (3) whether the trial court erred in granting plaintiffs' motion for summary judgment when the representatives of the unincorporated body disfellowshipped the entire congregation; and (4) whether the trial court correctly construed the minutes and supplements to the minutes of the Church of God of Cleveland, Tennessee. The plaintiffs, on the other hand, present the issues as being: (1) whether the local church is a subordinate member of a higher church; (2) if so, what are the rules of the parent church concerning property ownership and do they apply to the property in question; (3) in view of the structure of the church and its rules concerning property, whether this dispute is to be resolved by the civil courts or the ecclesiastical bodies.

■■ We will deal first with the third issue raised by plaintiffs which, in essence, questions whether or not this court has jurisdiction to decide this case. We note first of all that the main issue involved in this case is the title to certain real estate located in the State of Illinois. We also note that this is certainly not the first dispute over church property rights to be brought before the courts in this and other States. Upon this question, the United States Supreme Court had the following to say in *Presbyterian Church v. Mary Elizabeth Blue Hull Memorial Presbyterian Church* (1969), 393 U. S. 440, 445, 21 L. Ed. 2d 658, 663, 89 S. Ct. 601, ___:

> "It is of course true that the State has a legitimate interest in resolving property disputes, and that a civil court is a proper forum for that resolution."

This court is, however, well aware of the limitations which the first amendment imposes when courts are dealing with matters that touch upon religion. Civil courts have no jurisdiction whatsoever to resolve certain types of disputes which arise between members of a particular religious denomination. (See, *e.g., Pfeifer v. Christian Science Committee on Publications* (1975), 31 Ill. App. 3d 845, 334 N.E.2d 876.) Further, in the process of resolving property disputes, civil courts must avoid determining ecclesiastical questions. *Presbyterian Church v. Mary Elizabeth Blue Hull Memorial Presbyterian Church; Serbian Eastern Orthodox Diocese v. Milivojevich* (1976), ___ U.S. ___, 49 L. Ed. 2d 151, 96 S. Ct. 2372.

Before considering plaintiffs' jurisdictional argument further, and in order to clarify the issues herein, we deem it necessary to define the various types of church government under which title to church property may be held. This is frequently termed "polity" or form of church government. It is best explained in, and frequently cited from the note, *Judicial Intervention in Disputes over the Use of Church Property,* 75 Harv. L. Rev. 1142, 1143-44 (1962):

> "At least three kinds of internal structure, or 'polity,' may be

discerned: congregational, presbyterial, and episcopal. In the congregational form, each local congregation is self-governing. The presbyterial polities are representative, authority being exercised by laymen and ministers organized in an ascending succession of judicatories—presbytery over the session of the local church, synod over presbytery, and general assembly over all. In the episcopal form power reposes in clerical superiors, such as bishops. Roughly, presbyterial and episcopal polities may be considered hierarchical, as opposed to congregational polities, in which the autonomy of the local congregation is the central principle."

With these definitions in mind, our understanding of the plaintiffs' argument is that it runs something as follows: the Church of God is a hierarchical church; the minutes and supplements to the minutes, which are adopted at biennial conventions, are conceded by both parties to contain the basic government and doctrines of the Church of God; these minutes and supplements contain various provisions dealing with ownership of real property; therefore, these provisions on property ownership constitute part of the doctrine of the church and the civil court must, in all cases, award the real property to whomever representatives of the Church of God believe it belongs to under their interpretation of their doctrine. While adoption of such a theory would certainly simplify the decision in cases such as this one, we decline to apply it to this case for several reasons. First, the argument is premised upon the assumption that the Church of God is, in fact, hierarchical. In this particular case that is one of the main issues upon which the parties to this suit disagree.

■■ Even assuming that the hierarchical nature of a particular denomination was not in dispute, we believe that acceptance of the plaintiffs' argument would ultimately leave no room whatsoever for courts to resolve religious property disputes. We are aware that the courts in at least three other States have adopted, in varying degrees, positions similar to that advocated by plaintiffs. In *Serbian Orthodox Church Congregation of St. Demetrius v. Kelemen* (1970), 21 Ohio St. 2d 154, 256 N.E.2d 212, the Supreme Court of Ohio held that disputes over who would control real property must be resolved only by considering secular documents such as corporate by-laws and statutes. In *Draskovich v. Pasalich* (1972), 151 Ind. App. 397, 280 N.E.2d 69, 78-79, *cert. denied*, 414 U. S. 976, 38 L. Ed. 2d 219, 94 S. Ct. 291 (1973), a court of appeals in Indiana noted that religious documents concerning the doctrine and practices of a church often contained provisions governing ownership of real property, that these beliefs were primarily religious, and that they were often as strongly held as other beliefs concerning religious rites and ceremonies. Finally, in *Brady v. Reiner* (1973), __ W. Va. __, 198 S.E.2d

812, the Supreme Court of West Virginia held that the ecclesiastical law of a hierarchical church would determine the ownership of church property unless there was an express trust otherwise imposed upon such property. The West Virginia court did so even though it recognized that the decision almost completely closed the doors of the civil courts in such cases. Nevertheless, we are not persuaded that these decisions represent the better view or that they are mandated by the first amendment. By the time relations between two claimants to real property have deteriorated to the extent that one files suit against the other, it can be expected that the alleged parent organization will always claim the real estate if there are any religious documents dealing with the ownership of property. We can envision cases in which the particular provisions of some religious document might be contrary to or violate the laws of a given State. Such claims of religious belief or practice should furnish no license to violate State laws, which the civil courts are empowered to enforce. We also note that in *Maryland and Virginia Eldership of the Churches of God v. Church of God* (1970), 396 U. S. 367, 24 L. Ed. 2d 582, 90 S. Ct. 499, the Supreme Court said that the Maryland Court of Appeals had not inquired into religious doctrine when it determined which of two competing parties owned given parcels of real estate. In making its decision, the Maryland court had examined State statutory provisions governing the holding of property by religious corporations, the deeds conveying the property in question, the charters of the local church corporations, and the constitution of the alleged parent organization. If consideration of such documents had violated the first amendment, we are certain that the Supreme Court would have said so. Finally, *Lowe v. First Presbyterian Church* (1974), 56 Ill. 2d 404, 308 N.E.2d 801, *cert. denied,* 419 U. S. 895, 42 L. Ed. 2d 139, 95 S. Ct. 174, clearly indicates that the local church must belong to, and be a subordinate member of the alleged parent hierarchical church before property could be awarded to the parent on the basis of its own rules.

Having decided that the civil courts are a proper forum in which to resolve the dispute between plaintiffs and defendants herein, we turn to the other issues raised by the parties. As noted previously, the main points of disagreement between the parties include whether or not the Church of God is hierarchical, and whether or not the Virginia Avenue Church of God is a member of that alleged hierarchical church and thus bound by its rules concerning the ownership and control of real estate. In order to reach its decision in favor of plaintiffs, the trial court must have decided both of these issues in favor of the plaintiffs. This brings us to an issue raised only indirectly by the briefs and not argued by either party, which is whether it was proper for the trial court to decide this case on a motion for summary judgment.

As we said in *Stanfield v. Medalist Industries, Inc.* (1975), 34 Ill. App. 3d 635, 638, 340 N.E.2d 276, 278:

"The principles applicable to summary judgment proceedings are well established. * * * The purpose of summary judgment proceedings is to determine whether there is any genuine issue of triable fact. [Citation.] The pleadings, depositions, and affidavits, if any, must be construed most strictly against the moving party and most liberally in favor of the opponent. [Citation.]"

In *Lesser v. Village Mundelein* (1976), 36 Ill. App. 3d 433, 437, 344 N.E.2d 29, 32-33, this court also pointed out that

"The summary judgment procedure is not intended to be used as a means of trying an issue of fact * * *. The right of the moving party must be clear, undisputed and free from doubt, and determinable solely as a question of law. Facts must be presented, not conclusions and the judge may not, on a motion for summary judgment draw fact inferences. [Citation.]"

With these principles in mind, we must determine whether summary judgment was properly entered. First, on the basis of the documents before it, could the trial court say, as a matter of law, that the Church of God is hierarchical? From an examination of the portions of the minutes and supplements to the minutes which were before the trial court, it appears that the Church of God exhibits certain characteristics in common with hierarchical churches, including a provision that the General Assembly has full power and authority to designate the teachings and practices of the local churches, that local churches cannot be recognized unless they accept the teachings of the Assembly, that the names of the local churches are recorded, and that the State Overseer had the authority to appoint and change pastors. These documents also contain a provision that the local board of trustees of a member church shall hold title to, use, manage, and control the real estate, pursuant to the directions of the local congregation, "provided that all such property shall be used, managed, and controlled for the sole and exclusive use and benefit of the Church of God." Further provisions, essentially similar to those appearing in the 1960 and 1963 deeds are also included in the minutes and supplements. We note also that the only two courts which have considered property disputes involving the particular Church of God involved in this lawsuit have concluded that it is a hierarchical church. *Polen v. Cox* (1970), 259 Md. 25, 267 A.2d 201; *Sustar v. Williams* (Miss. 1972), 263 So. 2d 537.

■■ In their argument directed to whether the Church of God is hierarchical, defendants raise two contentions which we deem appropriate to mention at this point. First, they argue that it is possible for a church to be hierarchical in some respects and congregational in

others—specifically that in terms of doctrine or appointment of clergy a church can be hierarchical while at the same time it may be congregational with respect to property matters. Second, defendants argue that for a church to be hierarchical it must in fact behave as a hierarchical church and that if the church's actions do not reflect hierarchical control, notwithstanding the contents of the religious documents, the church is not in fact hierarchical. With the first of these arguments we must agree. It is perfectly possible for a given church to combine elements of both hierarchical and congregational polities. (*Maryland and Virginia Eldership of the Churches of God v. Church of God, vacated and remanded,* 393 U. S. 528, 21 L. Ed. 2d 750, 89 S. Ct. 850 (1969), *previous opinion adhered to,* 254 Md. 162, 254 A.2d 162, *appeal dismissed,* 396 U. S. 367, 24 L. Ed. 2d 582, 90 S. Ct. 499 (1970).) The question before us, however, is whether there was any evidence before the trial court which indicated that the Church of God was hierarchical in some respects and congregational in others. In their motion for summary judgment and attachments, plaintiffs set forth provisions of the minutes and supplements to the minutes from which the trial court could readily determine that the Church of God was organized in a hierarchical manner. Although defendants dispute this conclusion, they did not put forth any evidence such as other provisions in the minutes and supplements from which one could determine that the Church of God is only partly hierarchical. While we have here noted defendants' argument that to be hierarchical, a church must behave as a hierarchical church, we believe that argument is properly directed to the question of what type of relationship there was between the hierarchical parent church and the local church. We conclude that, on the basis of the evidence before it, the trial court properly decided that the Church of God is a hierarchical church.

We turn now to the question of what sort of relationship existed between the Church of God and the Virginia Avenue Church of God. In paragraph 1 of their motion for summary judgment, plaintiffs alleged that, as more fully appeared from the affidavit of Thompson, the State Overseer, and the discovery deposition of Olis Hersey, the Virginia Avenue Church of God was a member church of the Church of God. Paragraph 18 of the Thompson affidavit says, "The Virginia Avenue Church of God became a member church of the Church of God on November 5, 1962," and further alleges dates upon which the predecessors of the Virginia Avenue Church of God allegedly became members of the Church of God. The attached portion of the deposition of Olis Hersey included the question whether or not the Virginia Avenue Church of God, from its beginning up until its termination, was a member church of the Church of God. Defendant Hersey answered, "As far as

being—saying terminated, we were a member of the organization, right." Defendant Hersey also stated in her deposition that she sent monthly reports concerning finances, membership, sermons given, etc., to the Illinois State Headquarters of the Church of God during the time that she was a minister at the Virginia Avenue Church of God.

The form of affidavits to be submitted in support of motions for summary judgment is governed by Supreme Court Rule 191 (Ill. Rev. Stat. 1973, ch. 110A, par. 191(a)). This rule provides in part that affidavits "shall set forth with particularity the facts upon which the claim, counterclaim, or defense is based; shall have attached thereto sworn or certified copies of all papers upon which the affiant relies; shall not consist of conclusions but of facts admissible in evidence * * *." The mere allegation in Overseer Thompson's affidavit that the Virginia Avenue Church of God was a member of the Church of God is clearly insufficient. This is a conclusion and not an allegation of facts from which that conclusion might be drawn. Further, we note that in the portions of the minutes and supplements to the minutes submitted to the trial court there was a provision for recording the names of the local churches, yet no copy of any record listing the Virginia Avenue Church of God as a member was submitted in support of the motion for summary judgment. Finally, we must note that if, as stated in the Thompson affidavit, the Virginia Avenue Church of God became a member of the Church of God on November 5, 1962, then it must not have been a member on October 24, 1960, when the first deed involved in this suit was executed. Plainly, the Thompson affidavit furnished no facts upon which the trial court could properly conclude that the Virginia Avenue Church of God was a member of the Church of God.

■■ Therefore, the question then becomes whether the Hersey deposition furnished a basis for such conclusion. This deposition must, of course, be construed most strictly against the plaintiffs in this case and most liberally in favor of the defendants. In ruling upon the plaintiffs' motion for summary judgment, it was proper for the trial court to examine the pleadings for the limited purpose of determining what the issues in the case were. (*Metropolitan Sanitary District v. Anthony Pontarelli & Sons, Inc.* (1972), 7 Ill. App. 3d 829, 839, 288 N.E.2d 905, 911; *Mastercraft Lamp Co. v. Mortek* (1960), 28 Ill. App. 2d 273, 275, 171 N.E.2d 427, 428.) In their amended complaint plaintiffs alleged that the Virginia Avenue Church of God was a member of the Church of God. In their answer, however, the Herseys and the Virginia Avenue Church of God denied that allegation but stated that there was in fact a religious connection of some sort between the two bodies. Thus, it is clear that there was some relationship; the question is as to its nature and extent. The answers in the Hersey deposition, construed in the light most

favorable to the defendants are consistent with some sort of religious connection short of actual membership in the Church of God. This falls far short of the clear and convincing evidence required before the trial court could conclude as a matter of law that the Virginia Avenue Church of God was a member of the Church of God and bound by its rules concerning the ownership of real property. The nature of the relationship between these religious bodies was clearly an issue of material fact and it was therefore error for the trial court to enter summary judgment in this case.

■■ The plaintiffs herein have relied heavily upon *Lowe v. First Presbyterian Church* (1974), 56 Ill. 2d 404, 308 N.E.2d 801, in support of their position. We agree with plaintiffs that *Lowe* is an important case insofar as it sets forth the law of Illinois in relation to property disputes involving hierarchical churches, to-wit: that under Illinois law there is an implied trust in favor of the hierarchical parent organization. *Lowe* does not, however, support the granting of summary judgment in the case before us. In *Lowe* the plaintiffs who represented the interests of the parent church set forth a whole series of events wherein the parent organization had exercised control over the local church, including its real property, which events were not denied by the defendants. Plaintiffs herein have included no such allegations in their motion for summary judgment or in the supporting material accompanying it.

Although this case must be remanded for the trial court to take evidence concerning the nature of the relationship between the Virginia Avenue Church of God and the Church of God of Cleveland, Tennessee, there are several other matters to be disposed of on this appeal. First, one of the defendants' arguments in this court is that, under the Illinois statutes governing religious corporations (Ill. Rev. Stat. 1975, ch. 32, pars. 170, 172), an unincorporated body cannot take precedence over an incorporated titleholder. We do not believe that is the proper interpretation of the statutes. Although the statutes certainly vest title to all real and personal property in the trustees and grant them power, under the direction of their particular church, congregation of society, to deal with the same and to enter into all lawful contracts concerning said property, the statutes do not in any way prohibit the incorporated body from holding property on an implied trust for the parent organization. Indeed, as we read *Lowe*, Illinois law implies such a trust in the case of hierarchical churches. We believe that incorporation is merely one fact to be considered in determining the relationship between the alleged parent organization and a local church. In *Lowe*, incorporation was required by the parent church and thus the fact that the local church had incorporated did not in any way indicate that it was not a member of, or subservient to, the parent organization. In other instances, however, the rules of the

parent church may be silent as to incorporation by local churches or may, in fact, prohibit such incorporation. Especially in the latter instance, the incorporation might be viewed as one indication that the particular local body was not a member of, or subject to the rules of the alleged parent. As noted above, incorporation is, however, merely one among many factors which a court should consider in determining whether a local church is a member of an alleged parent church. In this regard, we deem it is also significant to determine under what section of the Illinois statutes governing religious corporations the local church has been incorporated. Illinois law provides for the incorporation of "any church, congregation or society formed for the purposes of religious worship" in one portion of the statutes (Ill. Rev. Stat. 1975, ch. 32, pars. 164-175), and also for the incorporation of congregations, churches or societies which are directly under the patronage, control, direction or supervision of a higher ecclesiastical body (Ill. Rev. Stat. 1975, ch. 32, pars. 176-188). Not-for-profit corporations, for religious purposes, may also be organized under the provisions of the General Not for Profit Corporation Act (Ill. Rev. Stat. 1975, ch. 32, pars. 163a-163a100).

Defendants have also argued that it is they and not the Church of God which have contributed the funds to buy the real estate involved in this litigation and further that the members of the Virginia Avenue Church of God have remained unanimous in their opposition to the directives received from the representatives of the Church of God. While we agree with defendants that the source of funds used to purchase the property may be of some importance, we cannot agree that it is controlling. If the parent church provides the funds it is one factor indicating a hierarchical relationship between the two. On the other hand, if the members of the local congregation provide the funds used to purchase property, it is consistent with either a congregational or hierarchical form of church organization and ownership of property. The mere fact that the local church provided the money is irrelevant if the local church is part of a hierarchical parent organization. Likewise, unanimity of opposition to the directives of the parent organization is irrelevent if the local church is a member thereof. Both factors were present in *Lowe* but the Illinois Supreme Court, nevertheless, held that there was an implied trust in favor of the parent hierarchical church.

We turn now to the trial court's disposition of defendants' counterclaim for reformation of the deeds conveying the Virginia Avenue property or, in the alternative, to quiet title, for damages and for an accounting. The trial court denied this counterclaim and entered judgment thereon in favor of the plaintiffs. Initially we note that there are certain cases in which entry of a summary judgment on a complaint seeking reformation of a written instrument is proper. (*Wilcox v. Natural Gas Storage Co.*

(1962), 24 Ill. 2d 509, 182 N.E.2d 158.) In the context in which this case reaches us, as indicated above, however, we are constrained to hold that the entry of summary judgment was improper because of the underlying issue of the material fact concerning the nature of the relationship of the Virginia Avenue Church of God and the Church of God of Cleveland, Tennessee. If, after hearing the evidence adduced concerning the nature of the relationship between those two organizations, the trial court concludes that the Virginia Avenue Church of God is indeed a member of the hierarchical parent, the Church of God, a judgment denying reformation would be proper. This is simply because whether or not the deeds contain the limitations in favor of the parent church under Illinois law, there is an implied trust in favor of the parent. That trust would be implied regardless of whether the title was vested in the trustees of the Virginia Avenue Church of God, the Illinois religious corporation, or whether it was simply vested in the trustees of the Virginia Avenue Church of God, as provided for in the rules of the Church of God.

If, however, the trial court were to conclude that the Virginia Avenue Church of God is not a member of the hierarchical Church of God and is not subject to the provisions of its minutes and supplements concerning the ownership of real property, then defendants' counterclaim for reformation could significantly affect the outcome of this litigation. Under the express terms of the 1960 deed set forth above, the local board of trustees held title to the real estate for the general use and benefit of the Church of God. The limitations section of that deed further provided that if at any time the local board of trustees ceased to exist or to perform its duties then the State Overseer of the Church of God had the right to declare all offices on said board vacant and that in such case the State Board of Trustees of the Church of God would automatically hold title to the real estate. In our opinion these provisions impose an express trust in favor of the Church of God upon such real estate and vest in the State Overseer the power which he has purported to exercise. (*Sustar v. Williams* (Miss. 1972), 263 So. 2d 537, 544 (Robertson, J., specially concurring).) The provisions imposing this express trust, however, are the very provisions which the defendants herein have asserted in their counterclaim were inserted by mistake of the scrivener or by design of the agents of the counter-defendant Church of God.

■■ Illinois recognizes two general grounds for reformation of a written instrument, mutual mistake and fraud.

> "To reform an instrument upon the ground of mistake, the mistake must be of fact and not of law, mutual and common to both parties, and in existence at the time of the execution of the instrument, showing that at such time the parties intended to say a certain thing and, by a mistake, expressed another." (*Ambarann*

*Corp. v. Old Ben Coal Corp.* (1946), 395 Ill. 154, 166, 69 N.E.2d 835, 841.)

(See also *Wilcox v. Natural Gas Storage Co.*) Fraud may appear in either the form of misrepresentation of the facts or in terms of nondisclosure of relevant information. (*Wilcox v. Natural Gas Storage Co.*) As this court has previously said,

> "The instrument may also be reformed upon proof of a mistake by one party to the contract when the other party knows of the mistake and fails to inform the other party or conceals the truth from him." (*Biren v. Kluver* (1976), 35 Ill. App. 3d 692, 696, 342 N.E.2d 325, 328.)

In either instance, however, the person seeking reformation has a higher burden of proof than in the ordinary civil lawsuit and must prove his case by clear and convincing evidence. (*319 South La Salle Corp. v. Lopin* (1974), 19 Ill. App. 3d 285, 290, 311 N.E.2d 288, 291.) Although we do not wish to minimize the difficulties facing one who seeks reformation, we cannot say as a matter of law from the record before us that it will be impossible for defendants to sustain their burden of proof.

In this regard we note also that much of the evidence which might be adduced concerning the defendants' counterclaim for reformation of the deeds may have a bearing upon the relationship between the Virginia Avenue Church of God and the Church of God. The contacts between the two orgainizations and circumstances under which the 1960 and 1963 deeds were executed and delivered may properly be considered by the trial court in determining what relationship existed between these two organizations. Therefore, upon remand it will be proper for the trial court to consider this evidence as well as any other evidence going to the nature of the relationship between the two organizations together rather that first determining the relationship and then receiving further evidence on the claim for reformation, if applicable.

As regards the Riverside Blvd. property, there are other issues. In the deed by which it was conveyed on April 27, 1972, there is no express trust similar to that appearing in the 1960 and 1963 deeds of the Virginia Avenue property. Therefore, if the trial court determines that the Virginia Avenue Church of God was not a member of and not bound by the rules of the Church of God, that property, not being subject to the terms of any express trust in favor of any other group, may properly be declared to have been in the trustees of the Virginia Avenue Church of God. As such it was subject to conveyance in accordance with the rules of that particular religious group. Ill. Rev. Stat. 1975, ch. 32, par. 172.

Even if the trial court should determine that the Virginia Avenue Church of God was at one time a member of the Church of God and bound by its rules concerning real property, that does not automatically

end the inquiry in regard to the Riverside Blvd. property. It will be important to determine when that particular relationship changed or terminated. In their briefs plaintiffs have asserted that merely by the fact of taking title to the Riverside Blvd. property as trustees of the Virginia Avenue Church of God, the defendants have applied the minutes of the Church of God to that property. For this proposition they cite no authority and we have been able to discover none. It appears from the documents submitted to the trial court in this action that there is some sort of prescribed procedure in the Church of God for the acquisition of real estate. We note that in the section of the supplement to the minutes attached to the amended complaint there are provisions stating that a certain deed form is to be used in purchasing real estate for church property and that all deeds on new church property are to be submitted to the State office for approval before they are recorded. The adopted deed form, however, was not included in the record before us on this appeal and likewise we are not sure whether these two provisions constitute all those governing the acquisition of real estate. After it is determined what the prescribed church procedure for acquisition of real estate is, it will be important to determine to what extent it was complied with, if at all, by the Virginia Avenue Church of God when it acquired the Riverside Blvd. property. We note that the acquisition was apparently made just several months prior to the final split between the Virginia Avenue Church of God and the Church of God. If such property were acquired in direct contravention of the rules of the Church of God and during a time when the relationship was ending, under these particular circumstances we do not believe that the documents before us now furnish any basis upon which a trust can be implied in favor of the parent church. If there are other provisions applicable to such circumstances the parties are free to submit them for the consideration of the trial court. Absent such provisions we reject plaintiffs' argument that the mere taking of title in the name of the trustees is sufficient to subject such property to an implied trust in favor of the parent organization. Such an acquisition by the local church in violation of the prescribed rules and immediately before the termination of the relationship of the local church to the parent body certainly would provide an instance in which the parent body would have the right to exercise and impose whatever discipline its rules might provide for under the circumstances. Absent a provision in those rules that the penalty for "illegal" acquisition of property is the forfeiture of said property to the parent organization, there is no basis to imply a trust in favor of the parent.

■■ We turn now to the issue raised by the defendants herein as to whether the trial court correctly interpreted the minutes and supplements to the minutes of the Church of God which were before it. The disputed

provisions appear in a secton of the church documents entitled "Trustees Local." We will set forth here only a portion of the disputed provisions.

"Each local church of congregation that owns any real estate, such as a church building or parsonage, shall appoint a Local Board of Trustees * * *

* * *The Local Board of Trustees shall hold title to, manage, and control, pursuant to the direction of the local congregation, all real estate owned by the local congregation by which they are selected, provided that all such property shall be used, managed and controlled for the sole and exclusive use and benefit of the Church of God."

The remaining provisions under this major heading of "Trustees Local" use the work "property" throughout, sometimes referring to it as "such property," "said property" or "the local property." Defendants argue that the words "such as a church building or parsonage" appearing in the first sentence of the quoted provisions are words of limitation and therefore the provisions apply only to real estate improved with a church building or parsonage and not to vacant land. With this we cannot agree. We note that the words "any real estate" are used prior to the alleged words of limitation and also that the next two times the property is mentioned it is referred to as "all real estate" and "all such property." Defendants have cited to us many cases concerning the interpretation of written instruments which are ambiguous and supporting the general proposition that courts should give a written instrument the construction which ascribes some meaning to all of its provisions. To adopt defendants' argument we believe would be to ascribe no meaning to the words "any" and "all" real estate which are used in the beginning of this section. This, of course, we will not do. We therefore hold that the provisions in question apply, as they say they do, to "any real estate" and "all real estate." The words "such as a church building or parsonage" we interpret to be mere examples of types of real estate which a local congregation might own. Thus, in the absence of any evidence that the Church of God prohibits their local congregations from owning vacant real estate, or that the Church of God has other provisions in its minutes of supplements thereto which govern the owning of vacant real property, the trial court was correct in interpreting these provisions to apply to vacant as well as improved real estate.

Finally, as originally filed, this suit concerned title to personal property as well as real estate. As we noted at the beginning of this opinion, the trial court denied the plaintiffs' prayer for an accounting of this personal property and plaintiffs filed a notice of appeal from that portion of the order. However, the plaintiffs have neither briefed nor argued the issue concerning the denial of their prayer for an accounting in this court.

Under ordinary circumstances we would therefore deem this issue waived. (Ill. Rev. Stat. 1975, ch. 110A, pars. 341(e)(7), 341(f); *County of Lake v. Spare Things* (1975), 27 Ill. App. 3d 179, 181, 326 N.E.2d 186, 187.) Inasmuch as this case must be remanded for the determination of other issues, we deem that justice will best be served by vacating the ruling of the trial court on this issue and remanding it for a hearing on the merits. (*Hux v. Raben* (1967), 38 Ill. 2d 223, 224-25, 230 N.E.2d 831, 832; *Occidental Chemical Co. v. Agri Profit Systems, Inc.* (1975), 37 Ill. App. 3d 599, 603, 346 N.E.2d 482, 485.) Although we do not wish to be understood as intimating any opinion on the ultimate merits of plaintiffs' claim in this regard, we here point out that the ruling of the trial court was proper insofar as it denied plaintiffs' motion for summary judgment on the personal property. Plaintiffs' motion did not allege any facts, nor include any provisions of the minutes or supplements which could properly be interpreted as giving the Church of God any claim for an implied trust upon the personal property of the Virginia Avenue Church of God. As we have already noted, the provisions of those documents submitted to the trial court deal only with the ownership of real property. In this regard, they differ substantially from those of the United Presbyterian Church which were set forth in *Lowe v. First Presbyterian Church.*

For the foregoing reasons, the judgment of the circuit court of Winnebago County is affirmed in part, reversed in part, and remanded for further proceedings in accordance with the views expressed herein.

Affirmed in part: reversed in part: and remanded.

SEIDENFELD, J., concurs.