DRAGELEVICH ET AL., APPELLANTS, *v.* RAJSICH ET AL.,
APPELLEES.

[Cite as Dragelevich v. Rajsich (1970), 24 Ohio
App. 2d 59.]

(No. 4904—Decided November 10, 1970.)

*Mr. Don L. Hanni,* for appellants.
*Mr. Eugene Green, Mr. Joseph R. Bryan* and *Mr. Milan Tatalovich,* for appellees.

LYNCH, P. J.   This is a law and fact appeal arising out of a dispute among members of Holy Trinity Serbian Orthodox Church in Youngstown causing a division into two separate factions who recognize different priests as their parish priest.   Since 1963 there have been two separate Diocesan Bishops presiding over two separate dioceses with both claiming jurisdiction over this Serbian Eastern Orthodox Parish as well as other similar parishes.   The members of this congregation are divided in their allegiance to these two bishops, and this is the cause of the dispute between the two separate factions in this congregation.   For reasons of religious doctrine and practice, neither faction will co-operate to permit the other to worship on the church property under the chosen priest of the other faction.   The legal issue is which one of the two opposing factions has the right to the use of the church property.

Plaintiffs, in their amended petition, ask for an order of the court removing defendant the Very Reverend Peter Paunovich as parish priest of this congregation, and removing any and all officers of the congregation who do not recognize this congregation to be a part of the Serbian Eastern Orthodox Diocese for the United States of America and Canada.

Defendants, in their cross-petition, ask for an order of the court recognizing that Peter Paunovich is the parish priest of this congregation; that this congregation is a constituent part of the Eastern American-Canadian Diocese under the authority of Bishop Stefan Lastivca; and that the individual named defendants are the duly elected executive officers of this congregation. They further ask for an order enjoining the plaintiffs from installing a priest and rector not affiliated with the Serbian Eastern

Orthodox Church, and from interfering with and disrupting the orderly conduct of congregational meetings and religious rites.

The congregation of the Holy Trinity Serbian Orthodox Church is organized into an unincorporated association which is defendant Holy Trinity Serbian Orthodox Church School Congregation of Youngstown, Ohio, and which formally adopted by-laws in 1957.

Defendant Serbian Eastern Orthodox Congregation is a nonprofit corporation, incorporated for the following purpose:

"providing a place of worship for its members and conducting the same according to the rules, regulations and customs of the Serbian Eastern-Orthodox Church; of promoting the cause of the Christian religion; and of receiving, holding and disbursing gifts, bequests and funds arising from other sources; of owning and maintaining suitable real estate and buildings, and the doing of all things necessary or incident thereto."

It was stipulated that if the corporation, Serbian Eastern Orthodox Congregation and the Holy Trinity Serbian Orthodox Church School Congregation of Youngstown, Ohio are separate entities, the by-laws set forth are the by-laws of both entities.

The church property is in the name of defendant Serbian Eastern Orthodox Corporation.

There was another case between the two factions of this congregation, namely *Dragelevich et al.* v. *Paunovich et al.*, Civil No. 173004 C. P., Mahoning County, which was appealed to this court in case No. 4537. The appeal was dismissed for failure of plaintiffs, appellants herein, to file assignments of error and brief within the prescribed time.

As a result of the above case, an annual assembly of the Holy Trinity Serbian Orthodox Church School Congregation, in Youngstown, Ohio, was held December 20, 1964, under the supervision of the Mahoning County Common Pleas Court. Pursuant to the by-laws of the congregation, the officers of the executive board and the board

**62**

of trustees were elected, and they are the individuals who are the defendants in this action, with the exception of the Very Reverend Peter Paunovich, the parish priest who was the choice of defendants. The slate of officers was elected on a final vote of 198 to 3. However, votes preceding the election indicated that the decision was actually 154 to 87.

Therefore, we find that such defendants are the duly elected officers of the Holy Trinity Serbian Orthodox Church School Congregation of Youngstown, Ohio.

Under the by-laws, defendant Joseph Rajsich, as president of the executive board of this congregation, is the legal representative of the congregation and its defender before civil and church authorities.

The Serbian Eastern Orthodox Church represents an old established religion. It is hierarchial and episcopal in structure in matters pertaining to church doctrine and church government. The Serbian Eastern Orthodox Church is divided into dioceses supervised by a bishop.

In 1927, the Serbian Orthodox Diocese for the United States and Canada was organized and incorporated under the laws of the state of Illinois. It duly adopted a constitution, which was approved by the Serbian Orthodox Church of Yugoslavia. In 1939, the Holy Assembly of Bishops of the Serbian Orthodox Church of Yugoslavia appointed Bishop Dionisije as Bishop of the Serbian Orthodox Diocese for the United States and Canada.

The dispute in this case is the validity of the following church actions. The Holy Episcopal Synod of the Serbian Orthodox Church in Yugoslavia suspended Bishop Dionisije on May 10, 1963. The Holy Episcopal Council on May 17, 1963, disbanded the Diocese for the United States and Canada and in its place created three new Dioceses, one of which, the Eastern American-Canadian Diocese, claims jurisdiction over this congregation. The Holy Episcopal Synod appointed new bishops over the newly created dioceses. The Bishop appointed for the Eastern American-Canadian Diocese was Stefan Lastiva. The Holy Bishops Council on July 27, 1963, discharged Dionisije as Diocesan Bishop.

In August 1963, the Diocesan National Assembly of the Diocese of United States and Canada adopted a resolution declaring the division of their Diocese into three Dioceses to be unlawful and unconstitutional and refused to recognize the suspension of Bishop Dionisije or the election of the three new Bishops.

On September 3, 1963, the Holy Bishops Synod of Yugoslavia declared that the Diocesan National Assembly held in August was unlawful and its resolutions and acts were invalid.

On March 15, 1964, the Holy Episcopal Council defrocked Bishop Dionisije.

The by-laws of this congregation provide that their "church and congregation shall be considered as the integral part of the Serbian Orthodox Diocese for the United States and Canada," and that the parish priest is appointed by the Diocesan Bishop.

Under the by-laws and Diocesan constitution, the church congregation has the authority to elect its permanent priest "by contest" subject to the confirmation of the Diocesan Bishop. The parish priest is under the direct control of the Diocesan Bishop. However, all the church books and objects are the property of the church school congregation. In case of a dispute between the Diocesan Council and the Church School Council over the retention of a priest, and the Church School Council refuses to obey the decision of the Diocesan Council, the priest is to be transferred and the parish is to be left without a priest until it consents to receive the priest again.

The dispute in the instant case is part of a controversy that has existed in similar churches throughout the United States and Canada since 1963. A similar case arose out of the church membership of the Serbian Orthodox Church Congregation of St. Demetrius of Akron, Ohio, and went all the way to the United States Supreme Court, which remanded the case to the Ohio Supreme Court (393 U. S. 527) in light of *Presbyterian Church in the United States* v. *Mary Elizabeth Blue Hull Memorial Presbyterian Church*, 393 U. S. 440. The Ohio Supreme Court complied with the mandate of the United States Supreme Court

on March 4, 1970, by its decision entitled *Serbian Orthodox Church* v. *Kelemen*, 21 Ohio St. 2d 154.

Thus, we have legal guidelines to follow in the decision of this case. There is a voluminous record in this case which this court has reviewed. However, recent court decisions have narrowly limited the role of this court in its consideration of the factors over which the parties in this case are in dispute. Because of these decisions much of the record in this case is, at least, questionable as to its pertinence to the judicial determination of the property rights of the two opposing factions in the church property at issue here. For that reason, we will review the applicable law governing this court in its consideration of the facts of this case.

The First Amendment of the United States Constitution prohibits civil courts from the adjudication of controversies over religious doctrine and practice. *Serbian Orthodox Church* v. *Kelemen*, 21 Ohio St. 2d 154; *Presbyterian Church in the United States* v. *Mary Elizabeth Blue Hull Memorial Presbyterian Church,* 393 U. S. 440.

Upon review of the record, we conclude that the dispute in the instant case is more a matter of appointment of clergy or church administration than church doctrine. There are also legal guidelines to follow on this issue.

Religious organizations have the power to decide matters of church government for themselves free from state interference. Freedom to select the clergy, where no improper methods of choice are proven, has federal constitutional protection as part of the free exercise of religion against state interference. *Kedroff* v. *St. Nicholas Cathedral,* 344 U. S. 94; *Kreshik* v. *St. Nichols Cathedral,* 363 U. S. 190.

In the absence of fraud, collusion, or arbitrariness, the decisions of the proper church tribunals on matters purely ecclesiastical, such as the appointment of a clergyman, although affecting civil rights, are accepted in litigation before the secular courts as conclusive. *Gonzalez* v. *Roman Catholic Archbishop of Manila,* 280 U. S. 1.

Our conclusion is that the creation or alteration of the diocese having supervision over this parish church and the

appointment or removal of either the bishop presiding over the appropriate diocese or parish priest assigned to this church are matters of church government and constitutionally protected from state interference in the absence of any proof that the exercise of such powers was either fraudulent, collusive or arbitrary.

The main dispute in this case is the selection or removal of the parish priest of the congregation. The parish priest at the time of the filing of the petition was the Very Reverend Peter Paunovich, who continued in such position with the approval of the congregation pursuant to its by-laws. Father Paunovich refused to recognize Dionisije as his Bishop and, instead, recognized Bishop Stefan Lastiva of the Eastern American-Canadian Diocese as his superior. We understand that Father Paunovich has since resigned as parish priest and has been replaced by the congregation with another priest.

Plaintiffs contend that the retention of Father Paunovich as parish priest violates Articles 4 and 40 of the By-Laws (Joint Exhibit 9).

The case of *Serbian Eastern Orthodox Diocese* v. *Ocokoljich*, 72 Ill. App. 2d 444, 219 N. E. 2d 343, concerned a dispute over the control of the Diocese for the United States of America and Canada and the property and assets of such diocese between Dionisije and the bishops newly appointed by the Holy Episcopal Synod for the three new dioceses created by the Holy Episcopal Council. The appellate court of the second district of Illinois held that the Serbian Orthodox Church had the authority to remove Dionisije as Bishop of the Diocese for the United States of America and Canada, but that under the constitutions of both the Diocese and the Serbian Orthodox Church, and under the Illinois Religious Corporations Act, the Serbian Orthodox Church exceeded its authority when it purported to change the geographical structure of the Diocese and eliminate its administrative powers, including control over church properties, by dissolving the diocese and creating three new dioceses.

We do not feel that a determination whether the Diocese for the United States and Canada is still in existence

or has been disbanded is decisive in this case. Even if the Diocese for the United States and Canada is still legally in existence, we still have the question of who is the Bishop of such diocese. Since this is a matter of church government, it is a matter to be decided by the by-laws of this congregation and the constitutions of both the Diocese and the Serbian Orthodox Church.

The highest tribunal in the Serbian Orthodox Church is the Holy Episcopal Council of Bishops, which has the power to appoint and remove bishops. The Holy Episcopal Council of Bishops, which had appointed Dionisije as Bishop, has removed him as Bishop and declared him to be no longer an Orthodox clergyman. Thus, this court has to accept the ecclesiastical determination that Dionisije is no longer a bishop having jurisdiction over the diocese of which this congregation is a part.

Under the By-Laws and Diocesan Constitution, the selection of the parish priest is a joint action of the church congregation and the Diocesan Bishop, and it takes the concurrence of both to complete the appointment. The majority of this congregation who are represented by defendants do not recognize Dionisije as their Bishop.

Dionisije has ordered the release of Father Paunovich as parish priest of this congregation, and the Ecclesiastic Court of the Diocese for the United States of America and Canada ordered Father Paunovich to be defrocked and returned to the layman society.

However, even if Dionisije is still a Bishop having jurisdiction over this congregation, he cannot force his choice of a parish priest on this congregation against the will of the majority of the congregation.

Under the Diocesan Constitution, the final decision for the unfrocking of a priest is made by the Holy Bishop's Synod.

There is no evidence that the Holy Bishop's Synod had approved the action of the Ecclesiastic Court of the Diocese for the United States of America and Canada in defrocking Father Paunovich.

The by-laws of this congregation provide a procedure for the removal of the parish priest. There is no evidence that this procedure has been followed to remove Father Paunovich as parish priest.

Our conclusion is that in the appointment of a parish priest in the Diocese of the United States and Canada, the Serbian Eastern Orthodox Church is mostly hierarchial in this procedure; however, there is also a congregational element in the procedure for the selection of a parish priest. Under the circumstances of this case where there is no dispute as to the continuance of this church as a place of worship according to the rules, regulations and customs of the Serbian Eastern Orthodox Church, but the dispute is whether Dionisije has been defrocked as Bishop or whether he still has jurisdiction over this congregation, we find that the decision of defendant congregation to retain the Very Reverend Peter Paunovich as parish priest was made in accordance with the by-laws of this congregation and with the constitutions of both the Diocese and the Serbian Orthodox Church. We find no evidence that such decision was either fraudulent, collusive or arbitrary; therefore we deny the prayer of plaintiff's petition.

The legal issue in this case is the structure of this church regarding the ownership and control of the church property rather than its structure in matters pertaining to church doctrine and church government.

The Constitution of the Serbian Orthodox Diocese for the United States and Canada provides that the property of each church school congregation belongs exclusively to the respective congregation and the Diocese has no rights to such property. The direct management of church school congregational property belongs to the congregations.

The By-Laws of the Holy Trinity Serbian Orthodox Church School Congregation in Youngstown, Ohio, provide that the executive committee of this congregation shall "conduct, guide and administer all the movable and fixed property of this Congregation."

We conclude that as far as the ownership and control

of the church property is concerned, the member parishes of the Serbian Eastern Orthodox Diocese for the United States and Canada are congregational and independent.

We conclude that the defendant officers of the Holy Trinity Serbian Orthodox Church School Congregation, under the by-laws of such congregation and the Diocesan Constitution, have control of the church property at issue in this case.

Plaintiffs' amended petition for equitable relief is denied. Defendants' cross-petition is sustained to this extent. Defendant officeholders were the duly elective executive officers of the congregation of Holy Trinity Serbian Orthodox Church in Youngstown, and had the authority to administer all the movable and fixed property of this congregation. We find that the action of defendant congregation in retaining the Very Reverend Peter Paunovich as parish priest was made in accordance with the By-Laws of the Congregation and with the constitutions of both the Diocese and the Serbian Orthodox Church, and such decision did not violate any rights of the plaintiffs. Plaintiffs are enjoined from representing themselves to be officers of this congregation, from interfering with and disrupting the orderly conduct of congregational meetings and religious rites, and from the use and threats of violence. Defendant officeholders are also entitled to an accounting and return of all money and property of the congregation.

This case is remanded to the trial court for the purpose of carrying out its orders contained in paragraphs five through eight, inclusive, of its journal entry concerning the accounting of funds and contribution for janitorial and other expenses incurred in connection with the use of congregation property by plaintiffs.

*Judgment accordingly.*

O'NEILL and JOHNSON, JJ., concur.