318 S.E.2d 920

**CHURCH OF GOD OF MADISON, etc., et al.**

v.

**Chelsey NOEL, et al.**

No. 15911.

Supreme Court of Appeals of West Virginia.

June 13, 1984.

Dissenting Opinion July 24, 1984.

Homer W. Hanna, Jr., Charleston, for appellants.

Charles T. Bailey, Logan, for appellees.

NEELY, Justice:

This case involves a dispute between two groups of trustees of the Church of God of Madison over control of property conveyed to the church by successive deeds. The Circuit Court of Boone County granted summary judgment in favor of the first group of trustees, invalidating the second deed under which the successor trustees claimed control of the subject property. We conclude that the circuit court improperly interfered with an internal church dispute, and reverse.

On February 13, 1979 Russell G. Lester and Madeline J. Lester conveyed a parcel of land to "The Church of God of Madison" under general warranty deed with no restrictions or reservations. At the time of this conveyance, Nathan Marcum was the minister of the church and one of its trustees, along with Roger Malcom and Zina Lilly. These trustees were not named in the deed.

The local congregation's plans to construct a new church building upon the property were thwarted by the state church organization, which objected to their construction and financing plans and the terms of the deed. The deed had not been approved by the State Overseer prior to its execution, and failed to include several limitations required by the national organization, including provisions vesting beneficial ownership of the property in the state organization should the local congregation cease to exist or the local trustees fail to perform their duties.

As a result of these conflicts, the State Overseer removed Reverend Marcum from his position as pastor of the Madison Church of God on October 25, 1980 and appointed Reverend Chelsey Noel to replace him. Following the removal of Reverend Marcum, on November 2, 1980 seventeen members of the congregation informed the State Overseer that they were withdrawing their membership from the Madison Church of God and would no longer be affiliated with any part of the Church of God organization. Included in this group of dissidents were the two former trustees, Roger Malcom and Zina Lilly.

On November 3, 1980 the State Overseer appointed as new trustees for the Madison Church of God Reverend Chelsey Noel, Reverend William Starkey and Reverend Tommy Perry. For the sake of clarity, we will

refer to these trustees as the "successor trustees," and the first group of trustees as the "former trustees." The Church of God of Madison will be referred to as the "local church"; the Church of God in West Virginia, its boards and officers, will be called the "state church"; and, the Church of God, Cleveland, Tennessee, its governing bodies and officers, will be referred to as the "general church."

On November 14, 1980, the Lesters executed a corrective deed to the same property, substituting the successor trustees for the Church of God of Madison as grantees. This second deed also contained the limitations of use and beneficial ownership required by the general church.

The former trustees, joined by Russell G. Lester, then brought a declaratory judgment action in the Circuit Court of Boone County on behalf of the Church of God of Madison, against the successor trustees. The plaintiffs sought to set aside the corrective deed and to require the Lesters to convey the property to them, as the trustees who were in office at the time of the original purchase. As grounds for their relief the plaintiffs alleged misrepresentation, lack of consideration for the second deed, and defects in its execution.

The defendants moved to dismiss the complaint on the grounds that the plaintiffs were no longer trustees nor members of the church, and thus could not bring the action on behalf of the church. They argued that absent its proper trustees, the church was not a proper party. They further contended that the plaintiffs could not be persons interested under the deed, and consequently had no standing to maintain the action as individuals. Finally, the defendants asserted that they were acting as trustees of the church, and therefore could not be sued as individuals.

At the hearing on the motion to dismiss, the trial court found the first deed defective only because it conveyed the property to the church, a non-entity, instead of to the trustees of that church, as required by law. Therefore, the corrective deed should have merely substituted as grantees the trustees who were in office at the time the

property was acquired. The court refused to decide who were the proper trustees, or whether the first deed and the restrictions contained in the second deed were valid, stating that those matters were for the church to solve and not the courts. The defendants' motion to dismiss was denied.

The defendants then filed their answer relying upon the same grounds and seeking a declaration that the corrective deed was valid. The plaintiffs responded by filing a motion for summary judgment. At the hearing on their motion, the court refused to validate the corrective deed because it had changed not only the grantees, but also the content, of the original deed. The court said that the disagreements over who were the proper trustees, and whether the general church's requirements had been fulfilled in executing the deed, would properly be resolved within the church's internal organization. On February 10, 1983 the circuit court granted the plaintiffs' motion for summary judgment, set aside the corrective deed, and ordered that the Lesters convey the property to the former trustees of the Church of God of Madison.

The defendants now appeal, relying on the same grounds asserted in the lower court. They further contend that the trial court should not have granted the motion for summary judgment because there were several genuine issues of material fact to be resolved by the evidence. Specifically, they argue that the proper church authorities had already determined they were the proper trustees, and the court should have heard evidence on the matter. They seek reversal of the lower court decision and remand for a trial. While we agree with the appellants' basic contentions, under the facts of this case we do not think that a trial is necessary.

■ The central issue in this case involves neither standing nor the validity or construction of the subject deeds. Rather it all boils down to the question of who shall have control of this property. The former trustees seek to retain control of the property for the benefit of the disaffiliated members of the local congregation. The successor trustees, on the other hand,

are trying to regain control of the property for the benefit of the general church which they represent. By granting the plaintiffs' motion for summary judgment, the circuit court implicitly decided the very question it said it would not decide: Who are the proper trustees of the Church of God of Madison? As this is solely a matter of internal church government, the circuit court had no authority to substitute its judgment for that of the church.

■ As we held in syllabus point 1 of *Board of Church Extension v. Eads*, 159 W.Va. 943, 230 S.E.2d 911 (1976):

The power of the civil courts to interfere with the internal operations of churches is severely limited by the First Amendment to the *Constitution of the United States* as applied to the states by the Fourteenth Amendment, and by *West Virginia Constitution*, Art. III, § 15; therefore, the separation of church and state dictates two distinct approaches to church litigation depending upon whether a given church conforms to a hierarchical church structure where the local churches are connected with and subordinate to the laws, procedures and organs established by the constitution and bylaws of the general church, or alternatively whether the church is congregational in nature with authority vested in local congregations.

*Cf. Serbian Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976).

■ An extensive discussion of these two types of church government may be found in *Brady v. Reiner*, 157 W.Va. 10, 35–36, 198 S.E.2d 812, 827 (1973), *overruled on other grounds, Board of Church Extension v. Eads*, 159 W.Va. 943, 230 S.E.2d 911 (1976). For the purpose of judicial review, however, the important difference between the two systems is the manner in which they resolve intrachurch disputes. In the congregational structure, autonomy in church affairs, including doctrine, is vested in the local congregation, which acts according to the will of a majority of its members. By contrast, in the hierarchical structure the local congrega-

tion is subject to a larger church body, with a generally recognized internal system of conflict resolution.

■ In a hierarchical church, decision-making may be vested in ecclesiastical officers or elected representative bodies which constitute the highest authority in church disputes. *See Brady v. Reiner* and *Board of Church Extension v. Eads, supra.* Where the proper hierarchical authority has decided a question of church doctrine, practice or government, the courts must decline to intervene:

With regard to disputes within hierarchical churches, civil courts should respect, and where appropriate enforce, the final adjudications of the highest church tribunals, provided that such adjudications are not procured by fraud or collusion. Syl. pt. 2, *Board of Church Extension v. Eads*, 159 W.Va. 943, 230 S.E.2d 911 (1976).

*See also Watson v. Jones*, 80 U.S. (13 Wall.) 679, 20 L.Ed. 666 (1872); *Serbian Orthodox Diocese v. Milivojevich, supra.*

In the case before us, no testimony was taken on the question of whether the Madison Church of God was part of a hierarchical or a congregational structure. However, documents in the record indicate that the general governmental structure of the Church of God, Cleveland, Tennessee is hierarchical. Authority within the general church is apparently divided between administrative officers and representative bodies. On the local level the church is headed by its minister, decisions are made through congregational conferences, and property is held and managed by the local board of trustees for the general use and benefit of the general church, and for the particular benefit of the local church.

On the state level, the chief administrative officer is the State Overseer, who has authority to call local congregational meetings, to appoint and remove local trustees, and to recommend the appointment and removal of ministers. Matters of church discipline are handled by the State Trial Board, which hears charges against ministers and trustees, and recommends reten-

tion or revocation of ministries and membership with the church. The State Board of Trustees holds and manages properties for the use and benefit of the state church.

On the national level the General Overseer of the Church of God approves and ratifies the administrative decisions of the various State Overseers. The governing body of the general church is its General Assembly, which decides all questions of church doctrine and practice. In 1962 this General Assembly established the limitations which must be included in deeds to its member churches, and which are found in the corrective deed obtained by the appellants in this case.

 Although the appellees have contended that the Church of God of Madison is instead a congregational church, it is apparent that even they recognized the authority of the State Overseer and the general church, when the disaffected members of the congregation wrote a letter to the State Overseer announcing that they were withdrawing their membership from the local church and would no longer be affiliated with any part of the Church of God organization. Certainly these members have every right to withdraw from doctrinal unity and membership with the general church, but they cannot take general church property with them. *See Brady v. Reiner, supra; Venable v. Coffman*, 2 W.Va. 310 (1867). Under *W.Va.Code*, 35–1–1 *et seq.*, trustees of a hierarchical church hold legal title to church property for the use and benefit of its equitable owner, the general church, and are subject to its control. *Brady v. Reiner, supra.*

 In the case before us, the appellees were removed and replaced as trustees of the Church of God of Madison by the proper authorities of the general Church of God, and their successors obtained a corrected deed in conformity with the directives of the general church. Because the proper church authorities had already determined who were the proper trustees of the Church of God of Madison, the civil courts were bound to abide by that decision. Therefore, the circuit court should have granted the appellants' motion to dismiss the action. By intervening in a purely ecclesiastical dispute, the lower court erred, and must be reversed. The appellants are entitled to take title to the property under the deed of November 14, 1980.

Accordingly, the judgment of the Circuit Court of Boone County is reversed and the case is remanded with directions to dismiss the action.

Reversed and remanded with directions to dismiss the action.

MILLER, Justice, dissenting:

I find myself at odds with the majority and its use of Syllabus Points 1 and 2 of *Board of Church Extension v. Eads*, 159 W.Va. 943, 230 S.E.2d 911 (1976), to dispose of this case. These syllabus points do not give any guidelines, and when read with the majority opinion, suggest that once a court finds a church to be hierarchical in structure, it must defer to the decision of the church's highest tribunal. The most recent decision on church property disputes by the United States Supreme Court clearly holds, however, that such deference is not required by the Constitution.

Under *Jones v. Wolf*, 443 U.S. 595, 99 S.Ct. 3020, 61 L.Ed.2d 775 (1979),[1] the states are free to use any method of resolving church property disputes which does not require courts to decide questions of religious doctrine or polity. The compulsory deference approach of *Eads* is still constitutionally permissible, but it is now clear that it is not required. The majority's failure to discuss or even cite *Jones* leads me to believe that it is unaware of the fact that this decision has given state courts more freedom in handling church property disputes. This lack of awareness may explain

---

1. *Jones v. Wolf* has generated a considerable amount of scholarly commentary. *See, e.g.,* Adams and Hanlan, *Jones v. Wolf: Church Autonomy and the Religion Clauses of the First Amendment*, 128 U.Pa.L.Rev. 1291 (1980); Sirico, *The Constitutional Dimensions of Church Property Disputes*, 59 Wash. U.L.Q. 1 (1981); Comment, *Church Property Disputes: The Trend and the Alternative*, 31 Mercer L.Rev. 559 (1980); Note, *Church Property Disputes in the Age of "Common-Core Protestantism": A Legislative Facts Rationale for Neutral Principles of Law*, 57 Ind.L.J. 163 (1982).

its continuing allegiance to *Eads'* rather bland principles.

The majority relies on *Serbian Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976), which did not involve a property dispute between church members, but a procedural question concerning the removal of the Bishop of the American-Canadian Diocese of the Serbian Orthodox Church by the Patriarchate in Belgrade, Yugoslavia. The Supreme Court found that the validity of his removal was essentially a religious dispute even though property matters were collaterally involved.

More pertinent to the case at hand is *Jones v. Wolf*, 443 U.S. 595, 99 S.Ct. 3020, 61 L.Ed.2d 775 (1979), which dealt with a schism between members of a local presbyterian church that belonged to the Presbyterian Church in the United States (PCUS). A majority of the local members voted to withdraw from the PCUS and asserted control over the church property. A commission appointed by the PCUS hierarchy found that the minority faction constituted the "true congregation."

The minority faction then brought suit to gain control over the local church's property. However, the Georgia courts held under "neutral principles of law" that the majority faction was entitled to the church property. The United States Supreme Court approved the neutral principles approach, but vacated the judgment of the Georgia Supreme Court on the basis that it had not articulated the grounds for its decision.

In the course of its opinion, the Supreme Court sought to clarify the relationship of the freedom of religion clause of the First Amendment and the right of a state court to entertain a suit that seeks to settle title to church property.[2] First, it recognized that while "the First Amendment prohibits civil courts from resolving church property disputes on the basis of religious doctrine and practice ... [it] does not dictate that a State must follow a particular method of resolving church property disputes." 443 U.S. at 602, 99 S.Ct. at 3025, 61 L.Ed.2d at 784. The Court went on to reaffirm[3] the "neutral principles of law approach" for "settling a local church property dispute on the basis of the language of the deeds, the terms of the local church charters, the State statutes governing the holding of church property, and the provisions in the constitution of the general church concerning the ownership and control of church property." 443 U.S. at 603, 99 S.Ct. at 3025, 61 L.Ed.2d at 784.

It is important to note that the decision in *Jones* did not turn on identifying the nature of the church organization,[4] but on determining whether the parent church had the right to control local property under

2. The applicable portion of the First Amendment is: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof."

In *Brady v. Reiner*, 157 W.Va. 10, 198 S.E.2d 812 (1973), *overruled on other grounds, Board of Church Extension v. Eads*, 159 W.Va. 943, 230 S.E.2d 911 (1976), we traced in considerable detail the history of this portion of the First Amendment. We recognized that this clause was binding on the States through the Due Process Clause of the Fourteenth Amendment as a result of *Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in North America*, 344 U.S. 94, 116, 73 S.Ct. 143, 154–55, 97 L.Ed. 120, 136–37 (1952). In Syllabus Point 1 of *Brady*, we said:

"The West Virginia Constitution, Article III, Section 15 and the First Amendment to the United States Constitution absolutely forbid civil governments, either through judicial decision or legislative enactment, from interfering in church doctrine or practice—a matter of religious freedom, or from 'establishing' a church or form of church government to the detriment of another religious belief or organization."

3. The legitimacy of this approach was previously recognized in *Maryland and Virginia Eldership of the Churches of God v. Church of God at Sharpsburg, Inc.*, 396 U.S. 367, 90 S.Ct. 499, 24 L.Ed.2d 582 (1970); *Presbyterian Church in the United States v. Hull Memorial Presbyterian Church*, 393 U.S. 440, 89 S.Ct. 601, 21 L.Ed.2d 658 (1969).

4. This was the primary point of difference with the dissent which asserted that the PCUS was hierarchical and, therefore, controlled the local church's property. The dissent's position on whether a neutral inquiry can be made to determine if there are any specific provisions in the general church's documents regarding its control over a local church's property is ambiguous:

"A careful examination of the constitutions of the general and local church, as well as

general principles of trust and property law. In other words, *Jones* established that the First Amendment does not prohibit further inquiry once a court concludes that a church has been organized as a hierarchy. Under the neutral principles approach, a court may examine church documents, by-laws, deeds and other relevant material (other than doctrinal questions) in order to determine whether the parent church actually had control or ownership of the property prior to the schism or other controversy.

The neutral principles approach makes it easier to deal with cases where a denomination is not organized along purely hierarchical or congregational lines. The mixed nature of many churches has caused state courts to observe that the organization of a denomination may be hierarchical in some respects, and congregational in others. *Atkins v. Walker*, 284 N.C. 306, 200 S.E.2d 641 (1973); *see Southside Tabernacle v. Pentecostal Church of God, Pacific NW Dt.*, 32 Wash.App. 814, 650 P.2d 231 (1982). Thus, a particular group of churches may be hierarchical for purposes of church membership, the resolution of doctrinal questions, and the discipline of church officials, and congregational for purposes of using and controlling property. *Kelley v. Riverside Blvd. Ind. Church of God*, 44 Ill.App.3d 673, 3 Ill.Dec. 298, 358 N.E.2d 696 (1976); *Maryland & Virginia Eldership v. Sharpsburg*, 249 Md. 650, 241 A.2d 691 (1968), *vacated*, 393 U.S. 528, 21 L.Ed.2d 750, 89 S.Ct. 850 (1969); *Antioch Temple, Inc. v. Parekh*, 383 Mass. 854, 422 N.E.2d 1337 (1981); *Piletich v. Deretich*, 328 N.W.2d 696 (Minn.1982); *Dragelevich v. Rajsich*, 24 Ohio App.2d 59, 263 N.E.2d 778 (1970); *see Bennison v. Sharp*, 121 Mich.App. 705, 329 N.W.2d 466 (1982); *Struemph v. McAuliffe*, 661 S.W.2d 559, 566 (Mo.Ct.App.1983) ("When the question

is the right of control of property as distinguished from the vesting of title, the issue is resolved by a determination [that] the hierarchical structure of the church extends to the control of property."); *African Meth. Epis. Zion Church v. Union Chapel A.M.E. Zion Church*, 64 N.C.App. 391, 308 S.E.2d 73, 87 (1983) ("[U]pon remand, the major question to be answered ... is whether the defendant local church was in fact in a hierarchical relationship with the parent body with respect to property matters.").[5]

It is clear to me that the majority completely ignores the teaching of *Jones*. Moreover, it concludes that this case involves a hierarchical organization even though the record is virtually barren of any information concerning the relationship of the local church to the larger assembly known as the Church of God. The majority relies almost exclusively upon language in the corrective deed drafted after the schism occurred, because the trial court declined to take any evidence as to whether the Church of God was in fact a hierarchical church.

Even if it were hierarchical, under the neutral principles approach the court would still have to examine the relevant documents to ascertain whether the Church of God did in fact control the local church's property prior to the schism. Like the United States Supreme Court in *Jones*, I would remand the case for further factual development in accordance with the principles set out in *Jones*.

I, therefore, respectfully dissent.

other relevant documents, may be necessary to ascertain the form of governance adopted by the members of the religious association. But there is no reason to restrict the courts to statements of polity related directly to church property. For the constitutionally necessary limitations are imposed not on the evidence to be considered but instead on the object of the inquiry, which is both limited and clear: the civil court must determine whether the local church remains autonomous, so that its members have unreviewable authority to withdraw it (and its property) from the gener-

al church, or whether the local church is inseparably integrated into and subordinate to the general church." 443 U.S. at 619–20, 99 S.Ct. at 3034, 61 L.Ed.2d at 795. (Footnote omitted)

5. The distinction between hierarchical and congregational church structures as a means of resolving church property disputes between the local church and the general church body was initially recognized in *Watson v. Jones*, 80 U.S. (13 Wall.) 679, 20 L.Ed. 666 (1871).