367 S.E.2d 30 (1988)
ORIGINAL GLORIOUS CHURCH OF GOD IN CHRIST, INC. OF the APOSTOLIC FAITH and Bishop Oney Fitzpatrick, Bishop S. Graves and the General Board of the Original Glorious Church of God in Christ of the Apostolic faith
v.
Douglas MYERS, in his Capacity as Pastor of the Original Glorious Church of God in Christ, Deskins Addition, Logan County, West Virginia, and Individually, Effie L. Ruffin, John N. Bush and Fleming Hawkins, in their Capacity as Trustees of the Original Glorious Church of God in Christ, Deskins Additions, Logan County, West Virginia, and Individually, and Members of the Said Church.
No. 17257.
Supreme Court of Appeals of West Virginia.
March 4, 1988.
*31 Charles R. Garten, Cagle & Garten, Logan, for Douglas Myers et al., appellants.
Henderson & Henderson, Herbert H. Henderson, Huntington, for Original Glorious Church of God et al., appellees.
PER CURIAM:
This case is before the Court upon the appeal of Douglas Myers, former pastor of the Original Glorious Church of God in Christ, Deskins Addition, Logan County, West Virginia (hereinafter, the local church) and Effie Ruffin, John N. Bush and Fleming Hawkins, in their former capacities as trustees of the local church. It arises from an order entered following a trial without a jury in the Circuit Court of Logan County. The trial court voided a conveyance made by the former trustees of the local church and concluded that title was in the Original Glorious Church of God in Christ, Inc., of the Apostolic Faith (hereinafter the "national church").
The sole issue on appeal is whether, after voiding a clearly invalid conveyance of the local property, the trial court properly concluded that title was in the national church. The appellants contend that the trial court (1) improperly found that the governing ecclesiastical law dictates that the property remain under the control of the national church (through its trustees); and (2) improperly gave the national church legal title to the local property, violating W.Va. Const., art. VI, § 47.[1]
We affirm the trial court's order that the national church is entitled to the property, but modify it insofar as the order also gives the national church (rather than the national church trustees, who were also *32 parties to this action[2]) title to the local property.

I
The appellee, national church, filed an action in circuit court to regain property used by the local church prior to its disbanding. The national church was founded in West Virginia in 1920. Its national headquarters is in Cleveland, Ohio. There are 72 local churches in 12 states and 75 to 100 missions in Jamaica, Haiti and India.
The church is organized in a hierarchical structure.[3] All members agree to abide by the doctrinal and administrative law set forth in the Constitution and Government of the Original Glorious Church of God in Christ of the Apostolic Faith.
The appellants are the former pastor and trustees of the local church in Logan County, West Virginia. In February, 1983, a schism had developed between the national church and the local church. The entire congregation of the local church (a total of 9 persons), including the named appellants, trustees of the local church, Ruffin, Bush and Hawkins, agreed to leave the national church and formed their own church, the Emmanuel Tabernacle Baptist Church of God in Christ of the Apostolic Faith. The former trustees of the old local church continued to serve as the trustees of the new local church.
In July 1983, appellants, Ruffin, Bush and Hawkins attempted to convey the old local church property and its contents to the new church. The deed conveyed the property from Ruffin, Bush and Hawkins as trustees for the Original Glorious Church of God in Christ of the Apostolic Faith, Deskins Addition, Logan County, West Virginia, to Ruffin, Bush and Hawkins as trustees for the Glorious Tabernacle Church of God in Christ of the Apostolic Faith.[4] The trial court properly found that the July, 1983 deed was invalid as Ruffin, Bush and Hawkins were not, as of February, 1983, members, let alone trustees, of the Original Glorious Church of God in Christ of the Apostolic Faith, Deskins Addition. Therefore, the July, 1983 conveyance was void.
Once this fact was clearly established at trial,[5] the only remaining issue was whether *33 the national church or the local church should retain control of the property.
The trial court found that the church has a hierarchical structure. It further found that based on various sections of the Constitution and Government of the Original Glorious Church of God in Christ, Inc. of the Apostolic Faith, the ecclesiastical law dictates that the local property belongs to the national body.
The appellants contend that these factual findings were not supported by the evidence and that the trial court improperly denied them a jury trial.

II
Due to First Amendment entanglement considerations, our Court has had a longstanding, limited form of review in church property dispute cases. Syl. pts. 1 and 2 of Church of God of Madison v. Noel, et al., ___ W.Va. ___, 318 S.E.2d 920 (1984) state:
`The power of the civil courts to interfere with the internal operations of churches is severely limited by the First Amendment to the Constitution of the United States as applied to the states by the Fourteenth Amendment, and by West Virginia Constitution, Art. III, § 15; therefore, the separation of church and state dictates two distinct approaches to church litigation depending upon whether a given church conforms to a hierarchical church structure where the local churches are connected with and subordinate to the laws, procedures and organs established by the constitution and bylaws of the general church, or alternatively whether the church is congregational in nature with authority vested in local congregations.' Syl. pt. 1, Board of Church Extension v. Eads, 159 W.Va. 943, 230 S.E.2d 911 (1976).
`With regard to disputes within hierarchical churches, civil courts should respect, and where appropriate enforce, the final adjudications of the highest church tribunals, provided that such adjudications are not procured by fraud or collusion.' Syl. pt. 2, Board of Church Extension v. Eads, 159 W.Va. 943, 230 S.E. 2d 911 (1976).
In Noel, this Court retained the analysis applied in Brady v. Reiner, 157 W.Va. 10, 35-36, 198 S.E.2d 812, 827 (1973) overruled on other grounds, Board of Church Extension v. Eads, 159 W.Va. 943, 230 S.E.2d 911 (1976).
This "judicial deference" form of analysis was first espoused in Watson v. Jones, 80 U.S. (13 Wall.) 679, 20 L.Ed. 666 (1871). If the church has a hierarchical structure and its leaders have addressed a doctrinal or administrative dispute, then civil courts do not intervene, absent fraud or collusion. Noel, 318 S.E.2d at 923.
First, under the "judicial deference" test, there was unrefuted evidence that the national church was hierarchically organized. The structure of the organization is clearly such that, "the local congregation is subject to a larger church body, with a generally recognized internal system of conflict resolution." Noel, 318 S.E.2d 923. See n. 3, supra.
Second, the national church's ruling body had already addressed the issue of property disputes. Two sections of the national church's constitution applied to the instant case.
Article VI, section 6 states that: "No church group desiring to leave this body shall have any legal claim on church property if the property in question was purchased and paid for with general funds or if general funds were in any way used in the purchase thereof."
The appellees produced a check in the amount of $300 from the national general fund to the local church for the construction of the local church in 1964.
Further, Article VIII(D), section III states: "Local Church Trustees Local church trustees are necessary only because state laws require them for holding property.... Trustees do not have the power to dedicate [sic] church policy." [The author of this section testified that the word "dedicate" was a typographical error and should *34 have read "dictate."] Therefore, under the judicial deference approach, which is the analysis currently used by this Court, there was ample evidence to support the trial court's findings that: (1) the church is hierarchical and (2) the governing board had previously addressed the issue. Evidence of fraud or collusion was not presented.[6]

III
After determining that the local church had no claim to the property, the trial court concluded that title was in the national church. The appellants contend this remedy, which gives legal title to the national church, violates Article VI, § 7 of the West Virginia Constitution as interpreted in syl., Osnes v. Morris, ___ W.Va. ___, 298 S.E.2d 803 (1982).
Under W.Va.Code, 35-1-1, et seq. [1923], the legislature provides the proper method of property conveyances for churches. In order to meet state constitutional considerations, the property must be titled to the national trustees for the benefit of the national church.[7] As stated in the syllabus of Osnes v. Morris, ___ W.Va. ___, 298 S.E.2d 803 (1982):
The grant of an interest in land in this State to an incorporated church in contravention of W.Va.Const., art. VI, § 47 is utterly void ab initio and subsequent conveyance by the corporation to trustees legally entitled to hold such an interest does not cure the initially void conveyance if there are other parties who affirmatively assert a bona fide interest in the land and who can either retain possession or enter into possession automatically by operation of law.
While the trial court's order simply stated that the national church (as opposed to the national trustees, who were also parties to this action) is the owner of the disputed property, the error is harmless. "On appeal of a case involving an action covered by the Rules of Civil Procedure, this Court will disregard and regard as harmless any error, defect or irregularity in the proceedings in the trial court which does not affect the substantial rights of the parties." Syl. pt. 2, Boggs v. Settle, 150 W.Va. 330, 145 S.E.2d 446 (1965). See also W.Va.R.Civ.P. 61.
While the trial court in its order improperly stated that the property belongs to the national church, as opposed to the trustees of the national church, this technical imperfection does not necessitate a remand. Under W.Va.Const., art. VIII, § 4, this Court may modify and correct the order since the overall finding that the national church is entitled to the property was supported by the evidence, and the failure to state that the national trustees shall hold the property is not a "material *35 issue presented for appellate determination." Syl. pts. 3 and 4, Young v. Young, 158 W.Va. 521, 212 S.E.2d 310 (1975).
The phrasing of the order has no effect on the rights of the appellants, therefore, the order is modified to comport with constitutional considerations, by granting the property to the trustees of the national church, and affirmed.[8]
Affirmed.
NOTES
[1] Article VI, § 47 of the W.Va.Const. states: "No charter of incorporation shall be granted to any church or religious denomination. Provisions may be made by general laws for securing the title to church property, and transfer thereof, so that it shall be held, used, or transferred for the purpose of such church or religious denomination."
[2] Bishops Fitzpatrick and Graves both serve as national trustees as do the General Board of Elders. Both Bishops Fitzpatrick and Graves, as well as the General Board of Elders, were named as plaintiffs in the action.

Appellants also assert for the first time that the case must be reversed due to lack of standing on the part of the national church, since it is incorporated in Ohio. In Board of Extension v. Eads, 159 W.Va. 943, 230 S.E.2d 911 (1976), this Court stated that the prohibition against incorporation of churches applies to nonresident incorporated churches. Therefore, the appellants contend that the national church is a "nonentity" and lacks standing. Eads is not controlling because the national trustees also joined as plaintiffs in the action. W.Va.Code, 35-1-12 [1931], specifically provides, in pertinent part:
When any individual church ... has become extinct, or has dissolved, ... a suit in chancery may be instituted ... by the ecclesiastical officer or religious body that by laws of the church, religious sect, society, or denomination to which such individual church... belongs, has the charge or custody of the property, or in whom or which it may be vested by the laws of the church ...;
[3] Local members are subject to local pastors. Local pastors are appointed by and responsible to District Elders. District Elders are responsible to State Overseers. State Overseers report to Diocese Bishops. The Diocese Bishops (14) compose the General Board of Elders. Of that Board, two Bishops, the General Bishop and Junior Bishop, control all other bishops. As stated in the Constitution and Government of the Original Glorious Church of God in Christ of the Apostolic Faith art. VIII(C), § 7, all doctrinal or administrative grievances operate through the "chain of command." The General Bishop is the sole administrative authority, art. V, § 2, and the General Board of Elders is the sole interpreter of doctrinal questions. Art. VIII(F), § 7.

Named plaintiff Fitzpatrick and named plaintiff Graves are, respectively, General Bishop and Junior Bishop of the national church.
[4] The 1983 deed does not appear in the record, as forwarded to this Court. However, the parties do not dispute the language of the deed, and the language appears in the trial court's findings.
[5] The fact that the congregation had disassociated itself from the national church as of February, 1983, was not known until near the conclusion of the trial when a witness for the appellants, the secretary of the local church, testified that the local congregation met in February, 1983, renounced membership in the old church, and decided to form its own church.
[6] Another form of judicial review which meets constitutional considerations is the more scrutinizing "neutral principles of law" test approved by the United States Supreme Court for property disputes within churches in Jones v. Wolf, 443 U.S. 595, 99 S.Ct. 3020, 61 L.Ed.2d 775 (1979). See also Miller, J., dissenting in Noel, ___ W.Va. ___, ___, 318 S.E.2d 920, 924 (1984). Under the neutral principles analysis deeds, state statutes, and ecclesiastical law are examined to determine whether the parties intended to create either an implied or expressed trust in the local property in favor of the national church. Jones, 443 U.S. 595, 604, 99 S.Ct. 3020, 3025, 61 L.Ed. 2d 775, 785.

Two of these factors were raised at trial by the appellants, as well as additional evidence of the parties' intentions. First, the constitution of the national church, discussed earlier, specifically provided that local property is nationally controlled, if either: the local church disbands or the national church contributed to it. Both of these contingencies occurred. Second, the local church was constructed on two parcels. One of the deeds conveyed land to the local trustees for the local church. The other deed conveyed the land to the local trustees for the national church. Finally, appellant Hawkins, former trustee of the local church, admitted that if national funds were used to facilitate the construction of a local church, it was his understanding that the national church would take the property. This statement against interest is highly probative in determining the parties' intentions.
While West Virginia has not adopted the neutral principles approach, even under this test, the trial court's findings were supported by the evidence.
[7] The national church itself recognizes this form of trusteeship. Art. VIII, § 6 of The Constitution and Government.
[8] Appellants also contend that the trial court erroneously failed to grant them a jury trial. We find the trial court's denial of appellants' motion for a jury trial as proper for two reasons. First, counsel for the appellants represented them for ten months prior to the pretrial meeting. Pleadings filed by appellants' former attorney, which did not demand a jury trial, were never amended during that ten-month period. Pursuant to W.Va.R.Civ.P. 38(b) and 39(b) the appellants had waived their right to a jury trial. Second, while the trial court may order a jury trial at any time during the proceedings, pursuant to Bennett v. General Accident Fire & Life Ins. Co., 149 W.Va. 92, 138 S.E.2d 719 (1964), the court had properly determined at the pretrial meeting that the issues to be tried were substantially issues of law.